UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAUL YUNGANAULA, individually and on behalf of all other persons similarly situated,<br><br>                   Plaintiff,<br><br>          v.<br><br>D.P. GROUP GENERAL CONTRACTORS/DEVELOPERS INC. and ABC CORPORATION, Jointly and Severally,<br><br>                   Defendants. | ECF CASE<br><br>No.:_____<br><br>CLASS AND COLLECTIVE ACTION COMPLAINT<br><br><br>JURY TRIAL DEMANDED |

NATURE OF THE ACTION

1.      Plaintiff Raul Yunganaula worked for Defendants D.P. Group General Contractors/Developers Inc. ("D.P. Group") and ABC Corporation ("ABC Corp.") (collectively "Defendants") as a laborer and a mason tender on several private and publicly financed construction projects within the State of New York, from Summer 2016 to October 2018.[1] Plaintiff brings this class action, on his behalf and on the behalf of other similarly situated current and former employees, against Defendants to recover unpaid wages and benefits which they were statutorily and contractually entitled to receive for work performed during their employment.

2.      Plaintiff alleges that Defendants willfully violated the Fair Labor Standards Act, 29 U.S.C. §§201 *et seq.* ("FLSA") by failing to pay him overtime premium pay.

3.      Plaintiff alleges, on his behalf and on behalf of other similarly situated current and former employees, that Defendants violated the New York Labor Law by (i) failing to pay

_____

[1] The dates and time ranges in this Complaint are based on Plaintiff's current memory and best estimates.

minimum wage, (ii) failing to pay overtime premium pay, (iii) failing to pay for all hours worked, (iv) failing to timely pay wages every week (v) failing to provide the Notice and Acknowledgement of Payrate and Payday under N.Y. Lab. Law § 195.1, and (vi) failing to provide an accurate wage statement under N.Y. Lab. Law § 195.3 with every wage payment.

4.      Plaintiff alleges, on his behalf and on behalf of other similarly situated current and former employees, claims against Defendants for unpaid prevailing wages and supplemental benefits to which they were statutorily and contractually entitled to for work performed on several publicly financed construction projects within the State of New York ("Public Works Projects").

5.      Plaintiff further alleges disability-based discrimination, failure to engage in good faith interactive process and failure to reasonably accommodate under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL").

<u>JURISDICTION, VENUE & ADMINISTRATIVE PROCEDURES</u>

6.      This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1337, 1343, and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiff's FLSA claims under 29 U.S.C. § 216(b).

7.      Venue is proper in this District under 28 U.S.C. §§1391(b)(1), 1391(b)(2): Defendant D.P. Group is a resident of this District; and a substantial part of the events giving rise to the action occurred in this District.

8.      This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

9.     Following the commencement of this action, a copy of this Complaint will be served on both the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, satisfying the notice requirements of the NYCHRL.

## THE PARTIES

10.     Plaintiff was and is, at all relevant times, an adult individual, residing in Brooklyn, New York.

11.     Defendant D.P. Group is a domestic business corporation organized under New York law, with its principal place of business at 902 Allerton Avenue, Bronx, New York, 10469.

12.     Defendant ABC Corp. is, upon information and belief, a domestic business corporation, organized and existing under the laws of the State of New York with its principal place of business in the State of New York.

13.     Each Defendant, either directly or indirectly, has hired and fired Plaintiff Yunganaula and controlled his work schedule and employment conditions, determined his payment rate and method, and kept at least some records regarding his employment.

## STATEMENT OF FACTS

14.     At all relevant times, Defendants operated construction businesses providing construction and demolition work on private and Public Works Projects in the State of New York.

15.     Upon information and belief, D.P. Group employs at least 100 individuals at any one given time.

16.     Upon information and belief, ABC Corp. employs at least 15 individuals at any one given time.

17.     From 2016 to 2019, D.P. Group worked as the general contractor on several private and Public Works Projects and used ABC Corp. as one of its subcontractors on some of the projects.

18.     From 2016, D.P. Group was the general contractor and ABC Corp. was its subcontractor at the Parkside Terrace project, located at 3211 Parkside Place, Bronx, New York, 10467 ("Parkside Project"). Both companies' employees often worked side-by-side at the jobsite.

19.     From 2016, D.P. Group and ABC Corp. worked at a project near the Bronx Zoo, located at 1815 West Farm Road, Bronx, New York, 10460 ("West Farms Project"). Upon information and belief, D.P. Group and ABC Corp. were subcontractors at the project. Both companies' employees often worked side by side at the jobsite.

20.     From 2017, D.P. Group was the general contractor at a project located at 918 East New York Avenue, Brooklyn, New York, 11203 ("Brooklyn Project").

21.     Upon information and belief, the Parkside, West Farms and Brooklyn Projects received at least some form of public financing and were Public Works Projects.

Dates and Duties Worked for Defendants[2]

22.     From Summer 2016 to Fall 2016, Plaintiff worked for ABC Corp. as a laborer at the Parkside Project.

23.     While he was working for ABC Corp. at the Parkside Project, his duties included assisting foundation and base construction workers with bringing materials, preparing and handing them tools, cutting wood and heavy lifting construction materials at the construction site.

---

[2] These subject lines are included only for organizational purposes.

24.     During several months of Plaintiff's employment, D.P. Group jointly employed him with ABC Corp. on the Parkside Project, because it was the general contractor and in charge of closely supervising ABC Corp. and its employees on the project.

25.     After ABC Corp. finished the foundation and base construction on the Parkside Project and was moving to work on the Farms Road Project, D.P. Group's foreman, Francisco Tapay, approached Plaintiff and offered him to stay at the Parkside Project to work directly for D.P. Group.

26.     From the end of 2016 to at least Summer 2017, Plaintiff worked as a mason tender for D.P. Group on the Parkside Project.

27.     While he was working for D.P. Corp at the Parkside Project, his duties included mixing cement, carrying and moving blocks, bricks and cement, heavy lifting, preparing the jobsite, materials and tools for the construction workers, including the masons.

28.     From Summer 2017 to early 2018, he mainly worked at the Parkside Project and the West Farms Project, switching between the jobsites sometimes a few days a week or a few weeks a month at a time.

29.     While he was working for D.P. Corp at the West Farms Project, his duties included mixing cement, carrying and moving blocks, bricks and cement, heavy lifting, preparing the jobsite, materials and tools for the construction workers, including the masons and carpenters. Sometimes he would also clean up the jobsite.

30.     From early 2018 to May 2018, Plaintiff mainly worked as a mason tender for D.P. Group at the Brooklyn Project, however, he also sometimes worked at the Parkside Project on as-needed basis.

31.     While he was working for D.P. Corp at the Brooklyn Project, his duties included mixing cement, carrying and moving blocks, bricks and cement, heavy lifting, preparing the jobsite, materials and tools for the construction workers, including the masons and carpenters. He also worked the hoist lift for several months.

32.     From May 2018 to August 17, 2018, Plaintiff worked for D.P. Group at the West Farms Project, where he suffered an injury at work.

33.     In October 2018, Plaintiff worked for D.P. Group at the West Farms Project for four days.

Hours Worked and Unpaid Wages

34.     Defendants did not require Plaintiff and his coworkers to clock in or clock out on most of the jobsites. Instead, they asked them to keep track of their own hours during the week.

35.     During all relevant times, Plaintiff generally worked for Defendants from Monday to Friday, and sometimes on Saturdays. Plaintiff regularly worked over 40 hours most weeks.

36.     When Plaintiff worked for Defendants on the Parkside Project, he generally worked Monday to Friday, from 7:00 a.m. to 5:00 or 6:00 p.m., with a 30-minute lunch break, equaling an average of 10-hour days and 50 hours per week.

37.     During his employment with D.P. Group, Plaintiff generally worked Monday to Friday, from 7:00 a.m. to 3:30 p.m., with a 30-minute lunch break, equaling 8-hour days and 40 hours per week. Additionally, at least two weeks per month, Plaintiff also worked on Saturdays, from 8:00 a.m. to 2:00 p.m., with a 30-miunte lunch break, equaling 5.5-hour day and 45.5 hours worked in those weeks.

38.     From Summer 2016 to Fall 2016, Defendants paid Plaintiff $20 per hour in cash.

39.     From Fall 2016 to August 17, 2018, D.P. Group paid Plaintiff $22 per hour by check.

40.     For his first week of work on the Parkside Project, Defendants failed to pay him any wages, instead claiming that his first week's pay was a "work deposit."

41.     From Summer 2016 to Fall 2016, although Plaintiff regularly worked more than 40 hours per week, Defendants only paid him $20 per hour regardless of the number of hours he worked.

42.     From Summer 2016 to Fall 2016, Defendants failed to pay Plaintiff overtime premium pay: 1.5 times his regular hourly rate for every hour worked over 40 in a given week.

43.     From Summer 2016 to Fall 2016, Defendants failed to pay Plaintiff and his coworkers for all the hours that they worked, because they regularly noticed that two to four hours were missing from their pay each week.

44.     When Plaintiff and his coworkers complained about the unpaid wages to one of the foremen, Gabriel Munov or Francisco Tapay, they would usually ignore their complaints and fail to pay them for the missing hours on the Parkside Project. Some of Plaintiff's coworkers quit their jobs because of the regular underpayments.

45.     From speaking to his coworkers, Plaintiff knows that when they worked for Defendants at the Parkside Project, they were also not paid any wages for their first week of work, were not paid for all of the hours worked and did not receive overtime pay for the hours over 40 in any given week.

46.     As the general contractor on the Parkside Project, D.P. Group is liable to Plaintiff and his coworkers for any of ABC Corp.'s wage and employment practices violations.

Untimely Paid Wages

47.     During his employment, Defendants failed to Plaintiff all of his wages every week, sometimes delaying his wages by at least a week.

48.     From 2016 to 2018, during his employment with D.P. Group at the Parkside, West Farms and Brooklyn Projects, every eight to 16 weeks Plaintiff noticed that some hours were missing from his paycheck at the end of the week.

49.     When Plaintiff complained to D.P. Group's foreman, Francisco Tapay about the missing hours, he would usually pay him the missing hours the following week or the week after that.

50.     During some weeks of his employment, Defendants failed to pay Plaintiff on a weekly basis, as the Labor Law requires. N.Y. Lab. Law § 191(1)(a).

51.     During his employment with Defendants, Plaintiff spent more than 95% of his working time engaging in physical labor, spending at least 8 hours per day performing manual labor.

52.     From speaking and observing to his coworkers, Plaintiff knows that they spent more than 95% of their time engaging in physical labor and their wages were also sometimes delayed by at least a week during their employment with Defendants.

Breach of Public Work Contracts

53.     The work performed by Plaintiff on the Public Works Projects was governed by contracts that required the payment of prevailing wages and supplemental benefits to him for every hour worked ("Public Work Contracts").

54.     Upon information and belief, the Public Works Contracts called for Defendants to furnish the necessary labor, material, and/or equipment to perform various work, including

construction and restoration of roads, installing of catch basins and manhole cover replacements, on the Public Works Projects.

55.     Upon information and belief, the schedule of prevailing rates of wages and supplements ("Prevailing Wage Schedule") to be paid to all workers furnishing labor on the site of the Public Works Project, including Plaintiff, was annexed to and formed a part of the Public Works Contracts.

56.     Upon further information and belief, the Prevailing Wage Schedule annexed to the Public Works Contracts was the schedule of prevailing rates of wages and supplemental benefits issued for the year in which the Public Works Contracts was let. The "prevailing rate of wage" is the rate of wage paid in the locality by virtue of collective bargaining agreements between *bona fide* labor organizations and employees of the private sector. *See* New York Labor Law § 220.

57.     This promise to pay and ensure payment of the prevailing wage and supplemental benefit rates in the Public Works Contracts was made for the benefit of all workers furnishing labor on the Public Works Projects and, as such, the workers furnishing labor on the sites of the Public Works Projects are the beneficiaries of that promise.

58.     Upon information and belief, the prevailing wage and benefit rate that Defendants were required to pay Plaintiff pursuant to the Public Works Contracts for labor furnished on the Public Works Projects was higher than the rate of pay Defendants actually paid him and his coworkers.

Unpaid Prevailing Wage and Supplemental Benefits Rates

59.     From the start of his employment with Defendants in 2016 until June 30, 2016, the hourly prevailing wage rate for Plaintiff as a laborer was $40.50 and the hourly supplemental

benefit rate was $36.53.[3] From July 1, 2016 to June 30, 2017, the wage rate and supplement benefit rate increased to $41.00 and $38.63,[4] respectively.

60.    From July 1, 2016 to June 30, 2017, the hourly prevailing wage rate for Plaintiff as a mason tender was $37.55 and the hourly supplemental benefit rate was $29.04.[5] From July 1, 2017 to January 21, 2018, the wage rate and supplement benefit rate increased to $37.90 and $30.59,[6] respectively. From January 22, 2018 to October 2018, the wage rate and supplement benefit rate was $38.40 and $31.04,[7] respectively.

61.    Defendants failed to pay Plaintiff and his coworkers the applicable prevailing wages, supplemental benefits and overtime compensation at the applicable rates that they were statutorily and contractually entitled to receive on the Public Works Projects.

62.    Defendants' failure to pay Plaintiff and his coworkers the overtime compensation at the applicable prevailing rates violated the FLSA's overtime protections.

63.    Defendants' violations of the Prevailing Work Contracts can result in them not being awarded any additional prevailing wage jobs.

64.    D.P. Group was the general contractor on the Public Works Projects and, as such, was responsible for payment of all prevailing wages and supplemental benefits by its subcontractors, including by ABC Corp.

---

[3] https://comptroller.nyc.gov/wp-content/uploads/documents/220-schedule2015-2016.pdf
[4] https://comptroller.nyc.gov/wp-content/uploads/documents/220-schedule2016-2017.pdf
[5] https://comptroller.nyc.gov/wp-content/uploads/documents/220-schedule2016-2017.pdf
[6] https://comptroller.nyc.gov/wp-content/uploads/documents/220-schedule2017-2018.pdf
[7] https://comptroller.nyc.gov/wp-content/uploads/documents/220-schedule2017-2018.pdf;
https://comptroller.nyc.gov/wp-content/uploads/documents/ConstructionWorkerSchedule-2018-2019.pdf

65.     D.P. Group failed to ensure the payment of all prevailing wages and benefits to Plaintiff and other similarly situated employees and, as such, is jointly and severally liable with ABC Corp. for the unpaid wages and benefits under the Prevailing Wage Contracts.

Labor Law Notice and Wage Statement Violations

66.     Defendants paid Plaintiff in cash during part of his employment.

67.     Defendants did not post a poster advising Plaintiff and his coworkers of their rights to a minimum wage and overtime premium pay at their office or any job location.

68.     Most of Defendants' employees were Spanish-speaking and did not speak or read English. During his employment Plaintiff saw his coworkers ask about their rights or ask for documents in Spanish to learn about their pay, but Defendants refused to give them anything in Spanish.

69.     Defendants failed to provide Plaintiff with the Notice and Acknowledgment of Payrate and Payday under N.Y. Lab. Law § 195.1 when he was hired or at any point in his employment.

70.     Defendants did not provide Plaintiff with an accurate wage statement under N.Y. Lab. Law § 195.3 with every wage payment.

71.     Upon information and belief, Defendant failed to provide Plaintiff's coworkers with the Notice and Acknowledgment of Payrate and Payday under N.Y. Lab. Law § 195.1 when they were hired or at any point in his employment.

72.     Upon information and belief, Defendants did not provide Plaintiff's coworkers with accurate wage statements under N.Y. Lab. Law § 195.3 with every wage payment.

D.P. Group's Discrimination and Failure to Accommodate

73.     On August 17, 2018, Plaintiff suffered an accident to his foot and knee, which required medical treatment and recovery that prevented him from working for several months.

74.     Plaintiff attempted to returned to work in October 2018 and worked for four days; however, he had to stop working due to persistent pain.

75.     On about September 11, 2019, after almost full recovery, Plaintiff attempted to return to work at D.P. Group and called its foreman, Francisco Tapay, to inquire about availability of work.

76.     The foreman told Plaintiff that there was "lots of work available" and that he should come back to work whenever he is ready. After hearing this, Plaintiff informed the foreman that he must work on "light duty" as per his doctor's orders. The foreman told him to send the letter from the doctor to proceed with returning to work at D.P. Group.

77.     On September 13, 2019, Plaintiff sent the foreman his doctor's letter, stating that he was ready to return to work on September 13, 2019, but that he could not "lift[] more than 40 pounds [and must be allowed] rest periods after extended weight bearing."

78.     After Plaintiff sent in the doctor's letter, requiring a reasonable accommodation for his work sustained injury, D.P. Group stopped communicating with him. Plaintiff followed up and called multiple times to schedule his return to work but got no response.

79.     On September 15, 2019, Plaintiff contacted the foreman about starting work at D.P. Group and did not hear back from him.

80.     On September 17, 2019, the foreman responded and told Plaintiff to send him the doctor's letter again because he was going to D.P. Group's office. Plaintiff sent him the letter but did not hear back from him.

81.     A few days later, Plaintiff called the foreman about returning to work. The foreman told him to contact D.P. Group's Human Resources to proceed with getting a return-to-work date because he was a "special case" and could not hire him with Human Resources.

82.     As instructed, Plaintiff called D.P. Group's Human Resources and spoke to the manager about returning to work at D.P. Group. However, once the manager learned who he was, she told him that she was going to have to call him back, but she never did.

83.     In September and October 2019, Plaintiff continued to call D.P. Group's Human Resources but they ignored his calls. However, eventually the manager picked up the phone and told him that he "must speak to the foreman because [he was] a special case" and he was in charge of hiring. When Plaintiff called the foreman, he told him that it was up to Human Resources to hire him back, once again ping ponging him back with no answers about his return date to work.

84.     In October 2019, after multiple attempts to return to work, D.P. Group informed Plaintiff that they have "no positions available," "no work for him." He later learned that he was officially terminated.

85.     From what the foreman told him before he sent in his letter and from speaking to his coworkers in September and October 2019, Plaintiff knows that D.P. Group was hiring workers for a new project and had multiple open positions available at the time he was terminated.

86.     Plaintiff's request to not lift weights over 40 pounds and to allow him rest periods after extended weight bearing would not have caused an undue burden upon D.P. Group.

87.     D.P. Group failed to engage in a good faith interactive process with Plaintiff to accommodate his reasonable accommodation request.

88.     D.P. Group fired Plaintiff because he requested a reasonable accommodation for his disability.

89.     D.P. Group's discrimination against Plaintiff led him to suffer emotional distress, including anxiety, depression and feelings of rejection, betrayal, shame, embarrassment, inadequacy, unfairness and fear for his livelihood.

COLLECTIVE ACTION ALLEGATIONS

90.     Under 29 U.S.C. § 206, Plaintiff seeks to assert these allegations and claims as a collective action:

> All persons whom Defendants employ and have employed in a positions of construction workers, including laborers and mason tenders, at any time since April 13, 2018 to the entry of judgment in this case (the "Collective Action Period"), who were employees within the meaning of the New York Labor Law (the "Collective Action Members").

91.     Plaintiff and the Collective Action Members are similarly situated on several legal and factual issues, including:

a.     Defendants employed the Collective Action Members within the meaning of the FLSA;

b.     Collective Action Members performed similar duties;

c.     Defendants willfully or recklessly violated the FLSA;

d.     Whether Defendants failed to pay the Collective Action Members overtime compensation for hours worked in excess of 40 hours per workweek at their regular rate of pay, violating the FLSA and the regulations promulgated thereunder;

e.     Whether Defendants failed to pay the Collective Action Members overtime compensation for hours worked in excess of 40 hours per workweek at the applicable prevailing wage rates, violating the FLSA and the regulations promulgated thereunder;

f.     Defendants should be enjoined from such violations of the FLSA in the future; and

g.      The statute of limitations should be estopped or equitably tolled due to Defendants' statutory violations.

<u>CLASS ACTION ALLEGATIONS</u>

92.     This action is properly maintainable as a class action pursuant to Article 9 of the New York Civil Practice Law and Rules.

93.     Plaintiff asserts these allegations and claims on his own and on behalf of a class consisting of:

> All employees whom Defendants employ and have employed in a positions of construction workers, including laborers and mason tenders, at any time since April 13, 2015 to the entry of judgment in this case (the "Class Period"), who were employees within the meaning of the New York Labor Law (the "Class" or "Class Members").

94.     The Class Members identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within Defendants' sole control, upon information and belief, more than 50 Class Members exist.

95.     Plaintiff's claims are typical of the Class Members', and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against Defendants.

96.     Defendants have acted or refused to act on grounds generally applicable to the Class Members, making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class Members.

97.     Plaintiff is committed to pursuing this action and has retained competent counsel experienced in employment law, wage and hour law, prevailing wages law and class action litigation.

98.     Plaintiff has the same interest in this matter as all other Class Members and his claims are typical of Class Members'.

99.     Common questions of law and fact exist as to the Class Members that predominate over any questions solely affecting the individual Class Members, including but not limited to:

a.     whether Defendants employed Plaintiff and the Class Members, individually or jointly, within the meaning of the Labor Law;

b.     whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and the Class Members;

c.     what proof of hours worked is sufficient where employers fail in their duty to maintain time records;

d.     whether Defendants failed or refused to pay the Class Members minimum wage and overtime premium pay at their regular rate of pay for all hours worked in excess of 40 hours per workweek;

e.     whether Defendants failed to provide the Class Members with wage notices and wages statements under Labor Law §§ 195.1 and 195.3;

f.     whether Defendants failed to post or keep posted a notice explaining the minimum wage and overtime pay rights provided under the Labor Law in any area where Plaintiff and the Class Members are employed;

g.     whether Defendants are liable for all damages claimed hereunder, including but not limited to, interest, costs and disbursements and attorneys' fees; and

h.      whether Defendants should be enjoined from such violations of the Labor Law in the future.

### FIRST CAUSE OF ACTION
### FAILURE TO PAY OVERTIME
### UNDER THE FLSA
(On Behalf of Plaintiff and the Collective Action Members against Defendants)

100.      Plaintiff realleges every preceding allegation as if set forth fully herein.

101.      Defendants were required to pay Plaintiff and the Collective Action Members no less than one and 1.5 times the regular rate at which they were paid for all hours worked in excess of 40 hours in a workweek under the overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 207(a)(1) and 215(a).

102.      At all relevant times, Defendants had a policy and practice of not paying overtime at the applicable overtime rate to their employees for their hours worked in excess of 40 hours per workweek.

103.      Plaintiff's and Collective Action Members' regular rate of pay on the Public Works Projects equaled to the prevailing wages and supplemental benefits rates.

104.      Upon information and belief, Defendants failed to pay Plaintiff and the Collective Action members overtime pay at the 1.5 applicable prevailing wage and supplemental benefits rates on the Public Works Projects further violating the FLSA.

105.      Defendants were aware or should have been aware that the practices described in this Complaint were unlawful, making their violations willful or reckless.

106.      Defendants have not made a good faith effort to comply with the FLSA with respect to Plaintiff and the Collective Action Members' compensation.

107.    Upon information and belief, Defendants also sometimes either shaved off or did not pay at least some of the overtime hours from Plaintiff and Class Members' paystubs, failing to pay them all wages due for those overtime hours.

108.    In failing to compensate Plaintiff and the Collective Action Members for all compensable hours worked, Defendants violated the FLSA and the regulations thereunder, including 29 C.F.R. §§ 785.13, 785.11.

109.    As a result of Defendants' FLSA violations, Plaintiff and the Collective Action Members have suffered damages by being denied overtimes wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recover of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION
### FAILURE TO PAY NEW YORK MINIMUM WAGE COMPENSATION
### UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiff and the Class Members against Defendants)

110.    Plaintiff realleges every preceding allegation as if set forth fully herein.

111.    Defendants are "employers" within the meaning of Labor Law §§ 190, 196-d, 651(5), 652 and supporting New York Statement Department of Labor Regulations and employed Plaintiff and the Class Members.

112.    The wage payment provisions of Article 6 of the Labor Law and supporting New York State Department of Labor Regulations apply to Defendants and protect Plaintiff and the Class Members.

113.    Under the Labor Law and supporting New York Statement Department of Labor Regulations, Defendants were required to pay Plaintiff and the Class Members the statutory minimum wage.

114.     Upon information and belief, Defendants failed to post, in a conspicuous place upon their premises a notice issued by the New York State Department of Labor summarizing minimum wage and overtime provisions, violating the Labor Law and supporting New York State Department of Labor Regulations. 12 N.Y.C.R.R. § 137-2.3, *et seq.*

115.     Defendants failed to pay Plaintiff and the Class Members the minimum wage when they did not pay them for their first week of work and kept it as a "work deposit."

116.     Defendants failed to pay Plaintiff and the Class Members the statutory minimum wage for each hour worked, making them liable for those hours at the statutory minimum wage.

117.     Defendants are accordingly liable to Plaintiff and the Class Action Members for the unpaid hourly minimum wage for all the hours worked.

118.     Defendants have willfully violated the Labor Law by knowingly and intentionally failing to pay Plaintiff and the Class Members the minimum wage.

119.     Due to Defendants' Labor Law violations, Plaintiff and the Class Members are entitled to recover from Defendants their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, and pre- and post-judgment interest.

<u>THIRD CAUSE OF ACTION</u>
FAILURE TO PAY THE OVERTIME PREMIUM PAY
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiff and the Class Members against Defendants)

120.     Plaintiff realleges every preceding allegation as if set forth fully herein.

121.     The unpaid wages at issue in this claim are "wages" under N.Y. Lab. Law § 190(1).

122.     Under the Labor Law and supporting New York Statement Department of Labor Regulations, Defendants were required to pay Plaintiff and the Class Members one-half (1.5) times their regular rate of pay for all hours worked in excess of 40 per workweek.

123.     Defendants failed to pay Plaintiff and the Class Members wages for all hours worked, including the overtime wages to which they were entitled, violating N.Y. Lab Law § 650 and Part 142, § 142-2.2 of Title 12 of Title 12 of the Official Compilation of Codes, Rules and Regulations promulgated by the Commissioner of Labor pursuant to the Minimum Wage Act.

124.     Defendants willfully violated the Labor Law by knowingly and intentionally failing to pay Plaintiff and the Class Members the correct amount of overtime wages.

125.     Due to Defendants' Labor Law violations, Plaintiff and the Class members are entitled to recover from them their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

<u>FOURTH CAUSE OF ACTION</u>
UNTIMELY PAID WAGES
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiff and the Class Members against Defendants)

126.     Plaintiff realleges every preceding allegation as if set forth fully herein.

127.     During their employment with Defendants, Plaintiff and the Class Members spent more than 25% of their time performing physical labor.

128.     Plaintiff and the Class Members were "manual worker[s]" within the meaning of N.Y. Lab. Law § 190(4).

129.     As manual workers, Defendants were required to pay Plaintiff and the Class Members "not later than seven days after the end of the week in which the wages are earned." N.Y. Lab. Law § 191(1)(a)(i).

130.     With Defendants paying Plaintiff and the Class Members a part of their wages with delays of at least one week, they paid them their wages later than seven days after the week in which they were earned, violating N.Y. Lab. Law § 191(1)(a)(i).

131.    For violating N.Y. Lab. Law § 191(1)(a)(i), Defendants are liable to Plaintiff and the Class Members for liquidated damages, interest and attorneys' fees and expenses. N.Y. Lab. Law § 198(1-a); Vega *v. CM Assoc. Constr. Mgt., LLC*, 175 A.D. 3d 1144 (1st Dep't 2019).

FIFTH CAUSE OF ACTION
FAILURE TO PROVIDE 195.3 WAGE STATEMENT
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiff and the Class Members against Defendants)

132.    Plaintiff realleges every preceding allegation as if set forth fully herein.

133.    Defendants have willfully failed to supply Plaintiff and the Class Members with the required statement with every payment of wages, violating Labor Law § 195.3.

134.    Due to Defendants' violations of N.Y. Lab Law § 195.3, Plaintiff and the Class Members are entitled to recover from Defendants $250.00 for each workday that the violations occurred or continue to occur, or a total of $5,000.00, reasonable attorneys' fees, costs, injunctive and declaratory relief. N.Y. Lab Law § 198(1)-d (2016).

SIXTH CAUSE OF ACTION
FAILURE TO PROVIDE 195.1 NOTICE
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiff and the Class Members against Defendants)

135.    Plaintiff realleges every preceding allegation as if set forth fully herein.

136.    Defendants have willfully failed to supply Plaintiff and the Class Members with the required Notice and Acknowledgement of Pay Rate and Payday under NYLL § 195.1(a) within ten business days of their first employment date.

137.    Due to Defendants' violations of Labor Law § 195.1, Plaintiff and the Class Members are entitled to recover from them $100.00 for each workday that the violations occurred or continue to occur, or a total of $5,000.00, reasonable attorneys' fees, costs, injunctive and declaratory relief. New York. Lab Law § 198(1)-b (2016).

SEVENTH CAUSE OF ACTION:
BREACH OF THE PUBLIC WORKS CONTRACTS
(On Behalf of Plaintiff and the Class Members against Defendants)

138.    Plaintiff realleges every preceding allegation as if set forth fully herein.

139.    Upon information and belief, the Public Works Contracts entered into by Defendants, contained schedules of the prevailing rates of wages and supplemental benefits to be paid a requirement to Plaintiff and the Class Members.

140.    Those prevailing rates of wages and supplemental benefits were made a part of the Public Works Contracts for the benefit of Plaintiff and the Class Members.

141.    Defendants breached the Public Works Contracts by willfully failing to pay and ensure payment to Plaintiff and the Class Members the prevailing rates of wages and supplemental benefits for all labor performed upon the Public Works Projects.

142.    By reason of its breach of the Public Works Contracts, Defendants are liable to Plaintiff and the Class Members in the amount to be determined at the trial, plus interest, costs and attorneys' fees.

EIGHTH CAUSE OF ACTION
DISABILITY DISCRIMINATION
UNDER THE NEW YORK CITY HUMAN RIGHTS LAW
(On Behalf of Plaintiff against D.P. Group)

143.    Plaintiff repeats every preceding allegation as if fully set forth herein.

144.    At all relevant times, Plaintiff was an "employee" and "person" under the NYCHRL.

145.    At all relevant times, D.P. Group was an "employer" under the NYCHRL.

146.    Plaintiff's foot and knee injury and complications and limitations, including not being able to lift over 40 and needing rest periods after extended weight bearing, arising from the injury constitute disabilities under the NYCHRL, N.Y.C. Admin. Code § 8-102(16)(a).

147.    Plaintiff's request to work on "light duty," not lift over 40 pounds and to allow for rest periods is a reasonable accommodation request under the NYCHRL.

148.    With the requested reasonable accommodation, Plaintiff could have performed the essential functions of his job.

149.    Instead of accommodating his disabilities, D.P. Group discriminated against Plaintiff by refusing him an opportunity to employment, leading him to suffer emotional distress, and ultimately terminated his employment, further violating the NYCHRL.

150.    In failing to provide a reasonable accommodation to Plaintiff's known disabilities and for failing to engage in a good faith interactive process, D.P. Group violated the NYCHRL. N.Y.C. Admin. Code §§ 8-107(1)(a), 8-107(15)(a).

151.    By terminating Plaintiff, D.P. Group violated the NYCHRL.

152.    No legitimate, non-discriminatory exits for D.P. Group to fire Plaintiff.

153.    As a result of D.P. Group's failure to engage in a good faith interactive process and to accommodate his disabilities, Plaintiff has suffered and continues to suffer, *inter alia*, loss of wages, lost pension monies and contributions, emotional distress, mental anguish, emotional pain and suffering, inconvenience and loss of enjoyment of life.

NINETH CAUSE OF ACTION<br>
DISABILITY DISCRIMINATION<br>
UNDER THE NEW YORK STATE HUMAN RIGHTS LAW<br>
(On Behalf of Plaintiff against D.P. Group)

154.    Plaintiff repeats every preceding allegation as if fully set forth herein.

155.    At all relevant times, Plaintiff was an "employee" and "person" under the NYSHRL.

156.    At all relevant times, D.P. Group was an "employer" under the NYSHRL.

157. Plaintiff's foot and knee injury and complications and limitations, including not being able to lift over 40 and needing rest periods after extended weight bearing, arising from the injury constitute disabilities under the NYSHRL, N.Y. Exec. Law §§ 292(21)(a)-(c).

158. Plaintiff's request to work on "light duty," not lift over 40 pounds and to allow for rest periods is a reasonable accommodation request under the NYSHRL.

159. D.P. Group was on notice of his disabilities, requested accommodation and failed to engage in good faith interactive process or to provide any reasonable accommodation, and subsequently discriminated against him by terminating his employment.

160. For failing to provide a reasonable accommodation to Plaintiff's known disabilities; for failing to engage in a good faith interactive process, and for terminating his employment, D.P. Group violated the NYSHRL. N.Y. Exec. Law §§ 296(1)(a) and 296(3)(a).

161. By terminating Plaintiff, D.P. Group violated the NYSHRL.

162. As a result of D.P. Group's failure to engage into the interactive process and accommodate his disability, Plaintiff has suffered and continues to suffer, *inter alia*, loss of wages, lost pension monies and contributions, emotional distress, mental anguish, emotional pain and suffering, inconvenience and loss of enjoyment of life.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, on behalf of himself and the Class Members, respectfully requests this Court grant the following relief:

a. Certifying this action as a class action under Article 9 and appointing Plaintiff and his counsel to represent the Class Members;

b. A declaratory judgment that the practices complained of herein are unlawful under the Labor Law;

      c.      An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

      d.      An award for unpaid minimum wage under the Labor Law;

      e.      An award for unpaid overtime premium pay under the Labor Law;

      f.      An award for failing to provide the N.Y. LAB. LAW § 195.1 Notice;

      g.      An award for failing to provide the N.Y. Lab. Law § 195.3 Wage Statements;

      h.      An award of liquidated damages as a result of Defendants' Labor Law violations;

      i.      An award of prevailing wages under the Public Works Contracts;

      j.      An award of supplemental benefits under the Public Works Contracts;

      k.      An award of liquidated damages as a result of Defendants' willful FLSA violations;

      l.      An award of pre-judgment and post-judgment interest;

      m.      An award of back pay, front pay, and all benefits along with pre- and post-judgment interest in the amount of at least $200,000 for Plaintiff;

      n.      Compensatory damages including, but not limited to, damages for pain and suffering, anxiety, humiliation, loss of enjoyment of life, emotional distress for Plaintiff;

      o.      Punitive Damages in order to compensate his for the injuries he has suffered and to signal to other employers that discrimination is repulsive to legislative enactments in the amount of at least $500,000 for Plaintiff;

p.      An award of costs and expenses of this action together with reasonable

attorneys' and expert fees; and

a.      Such other and further relief as this Court deems just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact

the Complaint raises.

Dated:  New York, New York
       April 14, 2021

LIPSKY LOWE LLP

<u>s/ Douglas B. Lipsky</u>
Douglas B. Lipsky
Milana Dostanitch
420 Lexington Avenue, Suite 1830
New York, New York 10170-1830
212.392.4772
doug@lipskylowe.com
milana@lipskylowe.com
*Attorneys for Plaintiff and*
*the Putative Class*