UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
RAUL YUNGANAULA,                                    :
                                                    :
                              Plaintiff,            :
                                                    :          MEMORANDUM AND
              -against-                             :               ORDER
                                                    :
D.P. GROUP GENERAL                                  :          21-CV-2015 (CBA)(MMH)
CONTRACTORS/DEVELOPERS INC., and                    :
BLANCO TRUCKING, INC., *jointly and severally*,     :
                                                    :
                              Defendants.           :
                                                    :
-------------------------------------------------------------- x

**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiff Raul Yunganaula sued Defendants D.P. Group General Contractors/Developers Inc., ("D.P. Group") and Blanco Trucking, Inc. ("Blanco"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the New York Labor Law ("NYLL"), the New York State Human Rights Law, ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL") for unpaid overtime wages, untimely paid wages, failure to provide proper wage notices and statements, and failure to accommodate his disability. (*See generally* 1st Am. Compl., ECF No. 17.)[1] Before the Court, on consent, is Plaintiff and D.P. Group's joint motion for settlement approval pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) ("Motion"). (*See generally* Mot., ECF No. 30.)[2] For the reasons set forth below, the Motion is **granted**.

---

[1] All citations to documents filed on ECF are to the ECF document number (i.e., "ECF No. ___") and pagination "___ of ___" in the ECF header unless otherwise noted.

[2] Blanco has not appeared in this action.

# I.  <u>BACKGROUND</u>

## A.  Factual Allegations

As alleged in the First Amended Complaint, D.P. Group, a Bronx-based business, is a general contractor providing construction and demolition work on private and public works projects within New York State.  (1st Am. Compl., ECF No. 17 ¶¶ 11, 15.)  Blanco, based in Queens, was D.P. Group's subcontractor on several projects.  (*Id.* ¶¶ 12, 18.)  Defendants employed Plaintiff as a laborer and mason tender on three public works projects from summer 2016 to October 2018.  (*Id.* ¶ 19–22.)

Plaintiff claims that he spent more than 95% of his work hours performing manual labor.  (*Id.* ¶ 55.)  Specifically, his duties at each jobsite included assisting foundation and base construction workers with bringing materials, preparing and handling the tools, cutting wood, and lifting heavy construction materials at the construction site.  (*Id.* ¶¶ 26, 30, 35.)  He also mixed cement; carried and moved blocks, bricks, and cement; periodically cleaned the jobsite; and worked the hoist lift.  (*See id.* ¶¶ 32, 35.)

Initially, from summer 2016 to fall 2016, Plaintiff worked directly for Blanco as a laborer on a jobsite where D.P. Group was the general contractor.  (*Id.* ¶¶ 19, 23, 27.)  Plaintiff subsequently worked directly for D.P. Group at three different jobsites from approximately the end of 2016 through summer 2018, sometimes switching jobsites multiple times per week.  (*Id.* ¶¶ 29, 31, 35–36.)

Plaintiff alleges that he worked an average of 43.3 hours per week from Monday through Friday, and some Saturdays.  (Mot., ECF No. 30 at 1.)  According to Plaintiff, he worked five to six days a week for eight hours per day, from 7:00 a.m. to 3:30 p.m., with a 30-minute lunch break. (*Id.*)  On two Saturdays per month, Plaintiff worked from approximately

8:00 a.m. to 2:30 p.m., also with a 30-minute lunch break, for an average of 6.5 hours per Saturday.  (*Id.*)  Plaintiff tracked his own hours on a sign-in sheet.  (*Id.*)

From fall 2016 to August 2018, D.P. Group allegedly paid Plaintiff $22 per hour by check regardless of the number of hours he worked each week.  (*See* 1st Am. Compl., ECF No. 17 ¶ 43.)  Sometimes the paychecks did not include all hours worked, though when Plaintiff complained, he received the missing pay within one to two weeks. (*Id.* ¶¶ 52–53.) Plaintiff also asserts that Defendants failed to provide Plaintiff with wage notices and wage statements.  (*Id.* ¶¶ 71, 73–75.)

Plaintiff injured his knee and foot on the job on August 17, 2018, which required treatment and recovery time away from work.  (*Id.* ¶ 77.)  Plaintiff attempted to return to work in October 2018 for four days but stopped due to ongoing pain.  (*Id.* ¶¶ 37, 78.)  In September 2019, Plaintiff provided a doctor's note clearing him to work with restrictions on lifting and with mandatory rest periods after heavy lifting.  (*Id.* ¶¶ 79–81.)  Plaintiff claims that when he tried to confirm a return-to-work date, he was bounced between a foreman and D.P. Group's Human Resources.  (*See id.* ¶¶ 85–87.)  After several attempts to return to work, Plaintiff learned that he was terminated in October 2019 and that there were "no positions available," even though D.P. Group hired other workers for a new project.  (*Id.* ¶¶ 88–89.)

**B.  Relevant Procedural History**

Plaintiff filed suit against D.P. Group and an unknown "ABC Corporation" on April 14, 2021 as a collective action for failure to pay overtime under the FLSA; failure to pay minimum wages, manual worker wages, and overtime under the NYLL; failure to provide wage statements and wage notices under the NYLL; breach of public works contracts; and disability discrimination under the NYCHRL and NYSHRL.  (*See generally* Compl., ECF No.

1.)  After D.P. Group answered the Complaint, the Court referred the parties to the Eastern District of New York's FLSA Mediation program and ordered them to exchange limited discovery to facilitate negotiations.  (Answer, ECF No. 13; Nov. 4, 2021 Order.)  Before the mediation, Plaintiff amended the complaint to substitute Blanco as a defendant.[3]  (Am. Compl., ECF No. 17.)  Plaintiff and D.P. Group settled the claims at mediation.  (*See* ECF No. 28.)

Plaintiff and D.P. Group moved for approval of the settlement on June 30, 2022 and attached a proposed settlement agreement for Plaintiff's wage and hour claims ("First Agreement").  (Mot., ECF No. 30.)  At the Court's request, both Plaintiff and D.P. Group submitted additional briefing regarding Plaintiff's damages calculations.  (Pl. Suppl. Ltr, ECF No. 31; Def. Suppl. Ltr, ECF No. 32.)  The parties also submitted a confidential settlement agreement governing the non-wage and hour claims against D.P. Group ("Second Agreement").  (ECF No. 34.)  At a motion hearing on February 28, 2023, the Court raised concerns regarding, *inter alia*, sweeping general release, confidentiality, and non-disparagement provisions in the Second Agreement that appeared to impermissibly include FLSA claims in this case.  (*See* Feb. 28, 2023 Min. Entry & Order.)  After conferring, the parties submitted an amended Second Agreement and supplemental receipts for the Court's review and consented to magistrate judge jurisdiction to decide the Motion.  (ECF Nos. 38, 40–41; Mar. 13, 2023 Order.)[4]

---

[3] Upon Plaintiff's request, the Clerk of Court entered a certificate of default against Blanco on March 23, 2022.  (ECF No. 27.)

[4] Both proposed agreements include executed stipulations of dismissal.  (ECF No. 33-1 at 10 (FLSA Claims); ECF No. 41-1 at 12 (non-FLSA claims).)

## II. <u>LEGAL STANDARD</u>

### A. *Cheeks* Review

"In the Second Circuit, 'parties cannot privately settle FLSA claims with a stipulated dismissal with prejudice under Federal Rule of Civil Procedure 41 absent the approval of the district court or the [United States] Department of Labor.'" *Cano v. Cherry Lawn Farms, Inc.*, No. 19-CV-9469 (AEK), 2021 WL 2481489, at *1 (S.D.N.Y. June 17, 2021) (quoting *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 599 (2d Cir. 2020)). "A reviewing court must ensure that the proposed agreement between the plaintiff and the defendant reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Li v. HLY Chinese Cuisine Inc*., 596 F. Supp. 3d 439, 445 (E.D.N.Y. 2022) (cleaned up). The Court's review must be based on the totality of the circumstances. *Cano*, 2021 WL 2481489, at *1.

Courts generally consider a non-exclusive list of factors to determine whether a settlement is fair and reasonable:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Fisher*, 948 F.3d at 600 (2d Cir. 2020) (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335–36 (S.D.N.Y. 2012)). Conversely, the following factors can weigh against approving a settlement:

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed

determination of the governing factual or legal issue to further the development
of the law either in general or in an industry or in a workplace.

*Abreu v. Congregation Yetev Lev D'Satmar Meats & Poultry, Inc.*, No. 17-CV-272
(KAM)(LB), 2019 WL 2526087, at *3 (E.D.N.Y. June 19, 2019) (quoting *Wolinsky*, 900 F.
Supp. 2d at 336).

"The Court must also separately assess the reasonableness of plaintiffs' attorney's fees,
even when the fee is negotiated as part of a settlement rather than judicially determined." *Li*,
596 F. Supp. 3d at 445. A court must "carefully scrutinize the settlement, including to ensure
that counsel's pecuniary interest 'did not adversely affect the extent of relief counsel procured
for the client.'" *Abreu*, 2019 WL 2526087, at *4 (quoting *Wolinsky*, 900 F. Supp. 2d at 336)
(cleaned up). To enable the Court to evaluate the reasonableness of the proposed fees, counsel
must submit evidence supporting their requested fees, including, for example, billing records.
*Wolinsky*, 900 F. Supp. 2d at 336.

## B. Review of Bifurcated Settlements

"The Second Circuit has not yet addressed whether the bifurcated settlement approach
is permissible under *Cheeks*." *Pascual v. Three Diamond Diner Corp.*, No. 21-CV-3333
(KMK), 2023 WL 1518513, at *4 n.5 (S.D.N.Y. Feb. 3, 2023) (citing *Fisher*, 948 F.3d at 607
n.12)). The Circuit has advised, however, that "[w]here a settlement dismisses with prejudice
both FLSA and state law claims, it seems to us a district court must take into account at least
the existence of the state law claims in assessing the reasonableness of the settlement, which
turns in part on the total potential recovery." *Fisher*, 948 F.3d at 607 n.12.

Applying this general guidance, courts have divergent views regarding how bifurcated
agreements should factor, if at all, when reviewing proposed settlements of FLSA claims.

Some courts examine the FLSA settlements and non-FLSA settlements "because the terms regarding . . . non-wage-and-hour claims may inappropriately affect the terms regarding . . . FLSA claims." *Doe v. Solera Cap. LLC*, No. 18-CV-1769 (ER), 2021 WL 1725734, at *1 (S.D.N.Y. Mar. 3, 2021) ("*Solera Cap.*"); *see also Luna v. J.S. Held LLC*, No. 2:21-CV-3072 (JMW), 2023 WL 2214012, at *3 (E.D.N.Y. Feb. 24, 2023) (reviewing both agreements); *Lee v. Samiti Tech. Inc.*, No. 21-CV-1032 (CBA)(TAM), 2021 WL 7906558, at *3 (E.D.N.Y. Sept. 8, 2021) (same).

Other courts, in cases with separate settlements for FLSA and discrimination or other non-wage and hour claims, decline review, even if the non-FLSA agreement "may contain provisions which would be fatal to a FLSA settlement, such as a non-disclosure clause." *Seecharan v. Heritage Place LLC*, No. 20-CV-3898 (WFK)(LB), 2021 WL 1299692, at *3 (E.D.N.Y. Mar. 15, 2021), *adopted by* 2021 WL 1299436 (E.D.N.Y. Apr. 7, 2021); *see also Liang v. Bioreference Lab'ys, Inc.*, No. 22-CV-0027 (HG), 2023 WL 1778789, at *2 (E.D.N.Y. Feb. 5, 2023) ("[T]he Court agrees with the parties that it need not review or approve their separate settlement of Plaintiffs' discrimination claims in order to approve the settlement of Plaintiffs' wage and hour claims."); *Pavone v. Diesel U.S.A., Inc.*, No. 21-CV-5219 (PAE), 2022 WL 1177344, at *2 (S.D.N.Y. Mar. 2, 2022) ("The Court further finds that the separate settlement of Pavone's state law discrimination claims does not [require] judicial approval."). The Court finds persuasive the reasoning of the cases that review non-FLSA settlement agreements to ensure that the terms governing the discrimination claims do not inappropriately affect the terms regarding FLSA claims. *Solera Cap.*, 2021 WL 1725734, at *1.

## III.    <u>DISCUSSION</u>

### A.  Terms of the Settlement

The motion for settlement approval includes the First Agreement, a fully executed "Settlement Agreement and Release" that sets forth the parties' agreed-upon terms for the wage and hour claims.  (Mot. Ex. A, ECF No. 30 at 6–16.)  The proposed settlement agreement provides for a total settlement payment of $8,052, of which $5,036.66 will be paid to Plaintiff in two installments and $3,015.33 will be paid to his attorney for fees and costs.  (*Id.* at 8 ¶ 2; Mot., ECF No. 30 at 2.)[5]  In consideration for the payment, Plaintiff will withdraw all claims underlying this action and any other wage and hour claims.  (Mot. Ex. A, ECF No. 30 at 9 ¶ 5.) The parties also submitted an amended Second Agreement under seal, which applies solely to the discrimination claims.  (ECF No. 38-1.)

### B.  The *Wolinsky* Factors Support a Finding of Fairness and Reasonableness

As set forth below, based on the totality of the circumstances, the Court finds that the proposed settlement is fair and reasonable.  *Wolinsky*, 900 F. Supp. 2d at 335.

#### 1.  *Plaintiff's Range of Possible Recovery*

A plaintiff can show the range of recovery based on, *inter alia*, facts alleged in the complaint or revealed through discovery.  *Luna*, 2023 WL 2214012, at *5–6 (rejecting FLSA settlement where the parties did not provide estimated number of hours worked or applicable

---

[5] The payments set forth in the settlement agreement total $8,051.99.  As counsel represented at the motion hearing, Plaintiff shall receive the additional $0.01.

ranges); *Douglas v. Allied Universal Sec. Servs.*, 371 F. Supp. 3d 78, 83–84 (E.D.N.Y. 2019), *reconsideration denied*, 381 F. Supp. 3d 239 (E.D.N.Y. 2019) (collecting cases).

As alleged, Plaintiff's most recent hourly rate was $22 per hour, making his overtime premium $11 per hour (i.e., 50% of his regular hourly rate).  (*See* 1st Am. Compl., ECF No. 1 ¶ 43.)  Based on these rates, Plaintiff claims total compensatory damages (excluding liquidated damages and interest) of $18,217 in three categories: (1) $2,524.50 in unpaid straight time; (2) $5,692.50 in unpaid overtime; and (3) $10,000 statutory penalties for failure to provide wage notices and statements.[6] (Pl. Suppl. Ltr., ECF No. 31 at 1–3.)  Pursuant to the First Agreement, Plaintiff will receive $8,052, approximately 44% of the gross total alleged compensatory damages and 28% of the net total alleged compensatory damages after fees and costs.  This recovery is reasonable and consistent with settlements approved in this Circuit. *See Sanchez v. DPC New York Inc.*, 381 F. Supp. 3d 245, 250 (S.D.N.Y. 2019) (approving a settlement where the plaintiff obtained only 19% of the maximum possible recovery); *Santos v. YMY Mgmt. Corp.*, No. 20-CV-1992 (JPC), 2021 WL 431451, at *1 (S.D.N.Y. Feb. 8, 2021) (finding that a settlement representing 18% of Plaintiff's total alleged damages and approximately 39% of his total alleged minimum wage and overtime was reasonable); *Zorn-Hill v. A2B Taxi LLC*, No. 19-CV-1058 (KMK), 2020 WL 5578357, at *4–5 (S.D.N.Y. Sept. 17, 2020) (approving a settlement amount representing 12.5% of the plaintiff's total recovery); *Chowdhury v. Brioni Am., Inc.*, No. 16-CV-344 (HBP), 2017 WL 5953171, at *2–3 (S.D.N.Y.

---

[6] "Courts in the Second Circuit have reached different conclusions when weighing the sufficiency of a plaintiff's allegations to show Article III standing to pursue NYLL wage notice and wage statement claims in federal courts." *Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929 (KAM) (RML), 2023 WL 2206568, at *5 (E.D.N.Y. Feb. 24, 2023) (collecting cases).  The Court need not reach these issues here, where the settlement is fair and reasonable whether damages for wage notice and wage statement violations are included (or not) in the range of recovery.

Nov. 29, 2017) (finding settlement of 40% fair and reasonable when defendants disputed the number of hours plaintiffs claimed to have worked and defendants claimed to have compensated plaintiffs fully). Therefore, this factor weighs in favor of reasonableness.

### 2. *Avoidance of Burdens and Expenses*

The proposed settlement will allow the parties to avoid significant litigation costs, including the costs of further discovery (e.g., depositions of Plaintiff and D.P. Group employees), motion practice, trial preparation, and potentially trial. *See Chowdhury*, 2017 WL 5953171, at *3 ("[T]he settlement will entirely avoid the burden, expense and aggravation of litigation. No depositions have taken place yet. . . . The settlement avoids the necessity of conducting this discovery."). Obtaining immediate recovery and avoiding unpredictable and costly litigation weighs in favor of approving the settlement agreement.

### 3. *Seriousness of the Litigation Risks*

The First Agreement also "avoids the serious risks of litigation" that Plaintiff faces. *Sanchez*, 381 F. Supp. 3d at 250; *see also Lopez v. Poko-St. Ann L.P.*, 176 F. Supp. 3d 340, 342 (S.D.N.Y. 2016) (settlement amount is fair "in light of the legal and evidentiary challenges that would face the plaintiffs in the absence of a settlement"). Plaintiff concedes that, after informal discovery, his claims of failure to pay minimum wage, untimely paid wages, and breach of the public works contracts for failure to pay prevailing wages and supplemental benefits do not apply to D.P. Group. (Mot., ECF No. 30 at 2 n.1.) As to the remaining wage claims, "the parties do not agree even on the basic facts: [Plaintiff's] hours worked." (*Id.* at 3; *see also* Def. Suppl. Ltr, ECF No. 32 at 1 ("Plaintiff's overtime claims are exaggerated and are refuted by Defendant's daily time records or weekly time records."); *id.* at 2 ("Defendant maintains that it does not owe Plaintiff for any straight time wages, as all straight time was

appropriately paid.").)   Finally, according to Plaintiff, Defendant's hardships during the COVID-19 pandemic substantially undermine their ability to withstand a larger judgment. (Mot., ECF No. 30 at 3.)

In light of these disputes and risks, Plaintiff's recovery is substantial and provides him with certainty regarding the resolution of the case.  *See Sanchez*, 381 F. Supp. 3d at 245 (approving a settlement where the plaintiff obtained only 19% of the maximum possible recovery; further litigation required overcoming the significant question of whether the defendants even qualified as employers under the FLSA).  Accordingly, this factor supports a finding of reasonableness.

### 4.  *Arm's Length Bargaining*

The Court also finds that the settlement terms are the product of arm's length bargaining between experienced counsel.  "Counsel for each party has participated in numerous FLSA and NYLL matters before this Court."  *Strauss v. Little Fish Corp.*, No. 19-CV-10158 (LJL), 2020 WL 4041511, at *4 (S.D.N.Y. July 17, 2020).   Further, the parties negotiated the proposed settlement through the Court-annexed mediation program before an experienced and well-respected mediator, Raymond Nardo.  These factors ensured that the negotiations were fair and fulsome, and support a finding of reasonableness.  *Castillo v. Ocean 21, LLC*, No. 22-CV-786 (RPK)(RER), 2022 WL 18858980, at *3 (E.D.N.Y. Nov. 1, 2022) (approving FLSA settlement after the parties exchanged informal discovery and participated in Court-annexed

mediation); *Miller v. United Parcel Serv.*, No. 20-CV-5244 (JMW), 2023 WL 2214107, at *3 (E.D.N.Y. Feb. 24, 2023) (same).

### 5. *No Fraud or Collusion*

The final factor also weighs in favor of approving the proposed settlement because there is no evidence of fraud or collusion. "[B]ecause Plaintiff is no longer employed by Defendant[], the risk of coercion—a concern in other cases—is minimal to non-existent." *Strauss*, 2020 WL 4041511, at *4; *see also Kaveh v. 1/0 Cap., LLC.*, No. 16-CV-3494 (JMF), 2017 WL 10436077, at *1 (S.D.N.Y. Feb. 24, 2017) (coercion "concerns are not as relevant when the plaintiff no longer works for the defendant"). Specifically, D.P. Group terminated Plaintiff's employment before Plaintiff pursued legal action. (1st Am. Compl., ECF No. 17 ¶¶ 88–89.) As a result, it is unlikely that D.P. Group held any undue influence over Plaintiff during negotiations.

### C. The Totality of the Circumstances Supports Approval of the Settlement Terms

Under the "totality of the circumstances," the proposed settlement is fair and reasonable. As set forth in detail above, several *Wolinsky* factors support a finding of reasonableness. Moreover, none of the *Wolinksy* factors weighing against reasonableness are present. For example, "[a]s Plaintiff no longer works for Defendants, his circumstances will obviously not recur. Although an argument could be made that maturation of this record could lead to further legal development in FLSA cases, this factor alone does not require the Court to reject the proposed settlement agreement." *Canales v. Norwich Serv. Station Inc.*, No. 20-CV-4759 (JMW), 2021 WL 5759727, at *4 (E.D.N.Y. Dec. 3, 2021).

Further, "the approach taken by the [p]arties here is unexceptionable as the Court can complete a *Cheeks* review of the entire Settlement Agreement that takes into account, where

necessary, the non-FLSA claims." *Pascual*, 2023 WL 1518513, at *4 n.5.  Neither the First Agreement nor the amended Second Agreement includes typical provisions that preclude approval, including (1) overbroad releases; (2) highly restrictive confidentiality provisions; (3) non-disparagement provisions that bar truthful statements; and (4) prohibitions on future employment.  *See, e.g.*, *De La Luz Aguilar v. Tacos Grand Cent., Inc.*, No. 21-CV-1963 (AT), 2023 WL 2644285, at *3 (S.D.N.Y. Mar. 27, 2023) (denying approval of overbroad release that "leaves open the possibility that it applies to claims other than the wage and hour claims that are the focus of this lawsuit"); *Luna*, 2023 WL 2214012, at *4 (denying approval of FLSA settlement where agreement contained overbroad non-disparagement provisions and releases); *Brittle v. Metamorphosis, LLC*, No. 20-CV-3880 (ER), 2021 WL 606244, at *3–4 (S.D.N.Y. Jan. 22, 2021) (denying approval of FLSA settlement agreement containing a bar on reemployment, an overly broad confidentiality provision, and an overly broad release); *Torres v. Mc Gowan Builders*, No. 18-CV-6099 (RML), 2020 WL 5369056, at *2–4 (E.D.N.Y. Sept. 8, 2020) (rejecting FLSA settlement agreement with overly broad confidentiality provision, high liquidated damages provision, non-disparagement provision, and general release of claims); *Doe v. Solera Cap. LLC*, No. 18-CV-1769 (ER), 2021 WL 568806, at *2–3 (S.D.N.Y. Jan. 20, 2021) (rejecting proposed FLSA settlement where separate confidential agreement for non-wage and hour claims included confidentiality and non-disparagement clauses that applied to FLSA claims).

### D.  Attorney's Fees

Agreements for attorney's fees must be reviewed for reasonableness, no less than any other part of an FLSA settlement.  *Caceres v. Brentwood Farmers Mkt., Inc.*, No. 20-CV-3476 (AKT), 2021 WL 3276637, at *2 (E.D.N.Y. May 4, 2021) ("FLSA settlements entered into

pursuant to a stipulated dismissal with prejudice represent a special type of contract because district courts are required to review these settlements for reasonableness . . . The obligation extends to the reasonableness of attorneys' fees and costs.") (quoting *Fisher*, 948 F.3d at 606) (internal citations omitted).  "There is no explicit limit on attorneys' fees in FLSA actions," and "a fee may not be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation." *Fisher*, 948 F.3d at 603–04 (quoting *Kassim v. City of Schenectady*, 415 F.3d 256, 252 (2d Cir. 2005)) (cleaned up).

"The Second Circuit favors the percentage-of-the-fund method of calculating attorney's fees because it 'directly aligns the interests of [Plaintiff] and [his] counsel.'" *Gonzalez v. Citusa Park Ave., LLC*, No. 20-CV-2326 (AT), 2020 WL 8920703, at *2 (S.D.N.Y. Nov. 30, 2020) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)).  Based on a contingency fee agreement with Plaintiff,[7] Plaintiff's counsel requests 33.3% of the proposed settlement—specifically, $2,518.33 in attorney's fees, $402 for filing costs, and $95 for service costs, totaling $3,015.33.  (Mot., ECF No. 30 at 4; Pl. Suppl. Ltr., ECF No. 31 at 3; Fee Agt., Mot. Ex. B, ECF No. 30 at 17–24.)  "Courts in this Circuit routinely approve of one-third contingency fees for FLSA cases," and therefore, this amount is reasonable. *Pernal v. Proflame Inc*., No. 21-CV-4526 (JMW), 2022 WL 16636689, at *5 (E.D.N.Y. Nov. 2, 2022); *Shamsundar v. FCS Grp. LLC*, No. 18-CV-2514 (KAM)(LB), 2019 WL 3716198, at *4 (E.D.N.Y. May 22, 2019) ("Courts in this district generally find 33%

---

[7] Pursuant to the contingency fee agreement, Plaintiff's counsel will collect "the greater of the two: the Firms' attorneys' fees for the Matter; or one-third (33.3%) of the total amount recovered on behalf of the Client."  (Fee Agt., Mot. Ex. B, ECF No. 30 at 19 ¶ 3.)  Counsel also will be reimbursed for "the expenditure of funds for litigation expenses and costs" from the settlement proceeds.  (*Id.* at 20 ¶ 4.)

of the overall settlement, mirroring the one-third contingency fee arrangement to be reasonable[.]").

"As a check on the reasonableness of attorney's fees, however, courts still calculate the total cost of attorney's hours billed, previously known as the lodestar method[,]" even where a retainer agreement exists. *Gonzalez*, 2020 WL 8920703, at *2. In utilizing the lodestar approach, courts multiply the number of hours spent on a case by an attorney's reasonable hourly rate. *Pernal*, 2022 WL 16636689, at *6 (citing *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).) Courts must determine if the hourly rate is "what a reasonable, paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 184 (2d Cir. 2008). "This rate should be based on rates 'prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation.'" *Dacas v. Duhaney*, No. 17-CV-3568 (EK)(SMG), 2020 WL 4587343, at *3 (E.D.N.Y. June 18, 2020) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998)), *adopted by* 2020 WL 4586371 (E.D.N.Y. Aug. 10, 2020).

"Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases." *Diaz v. Rene French Cleaners, Inc.*, No. 20-CV-3848 (RRM)(RER), 2022 WL 4646866, at *13 (E.D.N.Y. Aug. 29, 2022), *adopted by* 2022 WL 4662247 (E.D.N.Y. Sept. 30, 2022); *see also, e.g.*, *Aamodt v. Cnty. of Nassau*, No. 2:22-CV-1520 (JMW), 2023 WL 2538655, at *6 (E.D.N.Y. Mar. 16, 2023) (approving voluntarily-reduced partner rate of approximately $315 that "falls within the rates ordinarily accepted as reasonable for law firm partners in this district"); *Lopez v. 1923 Sneaker, Inc.*,

No. 18-CV-3828 (WFK)(RER), 2021 WL 1845057, at *9–10 (E.D.N.Y. Mar. 5, 2021), *adopted by* 2021 WL 1259623 (E.D.N.Y. Apr. 6, 2021) (collecting cases correlating rates to years of experience and awarding $375 an hour to a founding and managing partner of a labor and employment firm with 18 years of experience).

Based on the record, the proposed attorney's fees are also reasonable using the lodestar calculation. Plaintiff asserts that partner Douglas Lipsky, a named partner at Lipsky Lowe LLP who has practiced employment law for 17 years, expended 6.6 hours at a rate of $400 per hour. (Mot., ECF No. 30 at 4.) Associate Milana Dostanitch, who graduated law school in 2014 and has practiced employment law exclusively since then, expended 100.1 hours at $300 per hour. (*Id.* at 5.) Associate Bayron Flores Tapia, a 2021 law school graduate, expended 13.6 hours at $225 per hour. (*Id.*) Finally, paralegal Carmen Liggia Espinal expended 5.5 hours at $85 per hour. (*Id.*) With some exceptions, these hourly rates are reasonable. *See Diaz*, 2022 WL 4646866, at *14 (decreasing associate's hourly rate for exceeding the reasonable hourly rate for similarly experienced attorneys in this district). Further, "[a]lthough the purported hours are not separated according to wage-and-hour and other claims," *Solera Cap.*, 2021 WL 1725734, at *2, "where [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Pernal*, 2022 WL 16636689, at *6 (quoting *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)) (cleaned up).

Here, the contemporaneous billing records reflect "an appropriate amount of time . . . allocated to each task billed, all of which appear essential to achieving a successful outcome for the Plaintiff." *Castillo*, 2022 WL 18858980, at *4 n.1. Dividing the requested fee

16

($2,518.33) by the lodestar calculation ($36,196) yields a lodestar multiplier of .07, which reflects a reasonable range. *See Li*, 596 F. Supp. 3d at 452–53 (awarding attorney's fees with lodestar multiplier of .81); *Gonzalez*, 2020 WL 8920703, at *2 (approving attorney's fees with lodestar multiplier of 1.4 "given the risk of taking on a contingency fee case and the substantial success obtained in this case"); *Castillo*, 2022 WL 18858980, at *4 (approving attorney's fees with lodestar multiplier of 2.64 as "a fair recognition of the successful negotiation that spared all parties the costs, time, and risks of litigation").[8]

Accordingly, as either a percentage of the settlement or as a lodestar value, the requested attorney's fees are reasonable.

### E.  Costs

Finally, Plaintiff's counsel seeks costs of $497, which consists of the $402 filing fee and $95 for service costs. (*See* Mot., ECF No. 30 at 5.) The Court permissibly takes judicial notice of the docket notation for filing fees paid. *Phillips v. TraxNYC Corp.*, No. 21-CV-528 (LDH)(MMH), 2023 WL 1987206, at *11 (E.D.N.Y. Feb. 14, 2023), *adopted by* Dkt. Order, No. 21-CV-528 (LDH)(MMH) (E.D.N.Y. Mar. 14, 2023). Additionally, counsel submits receipts to justify the requested service costs. (Pl. 2d Suppl. Ltr. Ex., ECF No. 40-1.) The Court therefore approves the total requested costs as fair and reasonable. *Caceres*, 2021 WL 3276637, at *3.

---

[8] The Court would reach the same conclusion even if the attorney's fees in the amended Second Agreement were included because the lodestar multiplier would be slightly greater than 1. (*See* ECF No. 41-1 at 2.)

## IV. __CONCLUSION__

In summary, the Court finds that the proposed settlement is fair and reasonable.

Therefore, the joint Motion for Settlement Approval at ECF No. 30, as amended, is **granted**.

**SO ORDERED.**

Brooklyn, New York
March 30, 2023

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge

18