UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

RAUL YUNGANAULA,

       Plaintiff,

  -against-

D.P. GROUP GENERAL
CONTRACTORS/DEVELOPERS INC., and
BLANCO TRUCKING, INC., *jointly and severally*,

       Defendants.

---------------------------------------------------------------- x

<u>REPORT AND
RECOMMENDATION</u>

21-CV-2015 (CBA)(MMH)

**MARCIA M. HENRY**, United States Magistrate Judge:

   Plaintiff Raul Yunganaula sued Defendants D.P. Group General Contractors/Developers Inc., ("D.P. Group") and Blanco Trucking, Inc. ("Blanco"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 190 and 650 *et seq.*, and state and city human rights laws for their actions related to his employment. (*See generally* Am. Compl., ECF No. 17.)[1] Plaintiff and D.P. Group entered into a settlement with this Court's approval. *Yunganaula v. D.P. Grp. Gen. Contractors/Devs. Inc.*, No. 21-CV-2015 (CBA)(MMH), 2023 WL 2707024 (E.D.N.Y. Mar. 30, 2023). Before the Court is Plaintiff's motion for default judgment against Blanco, pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Civil Rule 55.2(b).

---

[1] All citations to documents filed on ECF are to the ECF document number (*i.e.*, "ECF No. ___") and pagination "___ of ___" in the ECF header unless otherwise noted.

(*See generally* Mot., ECF No. 44.)[2]  The Honorable Judge Carol Bagley Amon referred the motion for report and recommendation.  (May 3, 2023 Order Referring Mot.)

For the reasons set forth below, the Court respectfully recommends that Plaintiff's motion for default judgment should be **granted in part** as follows: (1) a default judgment should be entered against Blanco and (2) Plaintiff should be awarded damages as set forth herein.

## I.    BACKGROUND

### A.    Factual Allegations

The following facts are taken from the Amended Complaint and the declarations in support of Plaintiff's motion and are assumed to be true for the purposes of this motion. *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187–90 (2d Cir. 2015).

Blanco provides construction, demolition, and foundation services in the State of New York and was D.P. Group's subcontractor on the Parkside Terrace Project, located in the Bronx, New York ("Parkside Project").  (Am. Compl., ECF No. 17 ¶¶ 15, 18–19.)  Blanco employed Plaintiff as a laborer on the Parkside Project from August 2016 to June 8, 2017.  (Pl. Decl., ECF No. 44-3 ¶¶ 1, 3.)  Plaintiff's supervisor during his employment was Gabriel Munoz, one of Blanco's foremen.  (*Id.* ¶ 5.)  Plaintiff alleges that his primary duties included

---

[2] Plaintiff's submission includes a notice of the motion (Mot., ECF No. 44); a memorandum of law (Mem., ECF No. 44-1); the declaration of Douglas B. Lipsky, Esq. (Lipsky Decl., ECF No. 44-2 at 1–3) and its six exhibits (Lipsky Decl. Exs. A–F, ECF No. 44-2 at 4–99); and the declaration of Plaintiff (Pl. Decl., ECF No. 44-3).  Plaintiff's supplemental submissions in response to this Court's orders include an affidavit of service of the motion papers (Aff. of Service, ECF No. 45), receipts for costs (Receipts, ECF No. 47), and a proposed default judgment order (Proposed Judgmt., ECF No. 48).

assisting foundation and base construction workers with bringing materials, preparing and handing them tools, cutting wood, and lifting heavy construction materials as well as assisting carpenters and performing hoist lift work.  (Am. Compl., ECF No. 17 ¶ 26; Pl. Decl., ECF No. 44-3 ¶ 7.)

Plaintiff claims that he regularly worked more than 40 hours per week, although he was never paid overtime wages.  (Am. Compl., ECF No. 17 ¶¶ 45–46; Pl. Decl., ECF No. 44-3 ¶¶ 12, 16.)  According to the Complaint, Plaintiff worked Monday to Friday, from 7:00 a.m. to 5:00 or 6:00 p.m., with a 30-minute lunch break, averaging 10 hours per day and 50 hours worked per week.  (Am. Compl., ECF No. 17 ¶ 40; Pl. Decl., ECF No. 44-3 ¶ 9.)  Plaintiff alleges that Blanco paid him $20 per hour by personal check regardless of the number of hours he worked each week. (Pl. Decl., ECF No. 44-3 ¶¶ 10, 16.)  Plaintiff also regularly noticed that 2 to 7 overtime hours were missing from his weekly pay.  (*Id.* ¶ 13.)  Moreover, during Plaintiff's first week of work in August 2016, Blanco allegedly did not pay Plaintiff any wages, claiming that it was a "work deposit."  (*Id.* ¶ 11.)  As such, Plaintiff claims that Blanco did not pay him the then-applicable $9.00 hourly minimum wage for the entire first week.  (*Id.*; Mem., ECF No. 44-1 at 11.)  Plaintiff also asserts that Blanco failed to provide him with wage notices and wage statements as required under the NYLL. (Pl. Decl., ECF No. 44-3 at ¶ 16.)

### B.    Procedural History

On April 14, 2021, Plaintiff filed suit against D.P. Group and an unknown "ABC Corporation" as a collective action for failure to pay overtime under the FLSA; failure to pay minimum wages, manual worker wages, and overtime under the NYLL; failure to provide wage statements and wage notices under the NYLL; breach of public works contracts; and disability discrimination under city and state law.  (*See generally* Compl., ECF No. 1.)  After

3

D.P. Group answered the Complaint, the Court referred the parties to the Eastern District of New York's FLSA Mediation program.  (*See* Nov. 4, 2021 Order.)  On January 6, 2022, Plaintiff amended the Complaint to substitute "ABC Corporation" with Blanco.  (Am. Compl., ECF No. 17.)  Blanco was then served the Amended Complaint on January 31, 2022, and its answer was due February 21, 2022.  (ECF No. 24.)  Following Blanco's non-appearance, the Clerk of Court entered a notation of default against Blanco on March 23, 2022.  (Entry of Default, ECF No. 27.)  In May 2022, Plaintiff and D.P. Group reached a settlement through the Court-annexed mediation program, which the Court approved in March 2023.  *Yunganaula*, 2023 WL 2707024 at *4–8.  Blanco did not participate in the mediation.

Plaintiff filed the instant motion for default judgment against Blanco on April 14, 2023, seeking damages, including unpaid minimum wages, unpaid overtime pay, liquidated damages, pre-judgment interest, statutory penalties, and attorneys' fees and costs.  (*See generally* Mem., ECF No. 44-1.)  Judge Amon referred the motion for report and recommendation.  (May 3, 2023 Order Referring Mot.)  The Court directed the parties to appear for a motion hearing; Plaintiff appeared but Blanco did not.  (Jan. 30, 2024 Min. Entry.)

To date, Blanco has not appeared in the case or answered the Amended Complaint.

## II.    STANDARD FOR DEFAULT JUDGMENT

Rule 55 of the Federal Rules of Civil Procedure dictates a two-step process for a party to obtain a default judgment.  Fed. R. Civ. P. 55(a)-(b); *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *Nam v. Ichiba Inc.*, No.19-CV-1222 (KAM), 2021 WL 878743, at *2 (E.D.N.Y Mar. 9, 2021).  First, when a party uses an affidavit or other proof to show that a party has "failed to plead or otherwise defend" against an action, the clerk shall enter a default.  Fed. R. Civ. P. 55(a).  If a claim is for "a sum certain or a sum that can be made certain by

computation," the clerk can enter judgment.  Fed. R. Civ. P. 55(b)(1).  Second, and "[i]n all other cases, the party must apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2); *Victoriano Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-CV-6996 (DLI)(RER), 2021 WL 6065744, at *5 (E.D.N.Y. Dec. 22, 2021).  To "enter or effectuate judgment" the Court is empowered to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."  Fed. R. Civ. P. 55(b)(2).

The decision to grant or deny a default motion is "left to the sound discretion of a district court."  *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (cleaned up).  The Court must draw all reasonable inferences in favor of the movant.  *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  However, "a default . . . only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant."  *Double Green Produce, Inc. v. F. Supermarket Inc.*, 387 F. Supp. 3d 260, 265 (E.D.N.Y. 2019) (cleaned up).

## III.    JURISDICTION AND VENUE

### A.    Subject Matter Jurisdiction

Plaintiff concedes that his FLSA claim against Blanco is time-barred and has voluntarily withdrawn the claim.[3]  (Mem., ECF No. 44-1 at 9 n.1 & 12.)  Plaintiff's remaining claims are under the NYLL only, thereby depriving the Court of its original jurisdiction under 28 U.S.C. § 1331.  However, the Court respectfully recommends that supplemental jurisdiction over Plaintiff's NYLL claims is appropriate pursuant to 28 U.S.C. § 1367(a).

---

[3] As discussed below in the liability section, the Court agrees with Plaintiff's assessment that his FLSA claim is time-barred.  *See* § VI.A., *infra*.

Retaining supplemental jurisdiction is discretionary in circumstances where Plaintiff has abandoned federal claims. *Augusto Corrales v. AJMM Trucking Corp.*, No. 19-CV-4532 (LJL), 2020 WL 1911189, at *1 (S.D.N.Y. Apr. 20, 2020) (citing 28 U.S.C § 1367(c) ("district courts *may* decline to exercise supplemental jurisdiction") (emphasis added) and *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006)).  "[A] court may decline to exercise supplemental jurisdiction over state law claims at the default judgment stage if it denies default judgment as to all federal claims—so long as doing so serves 'judicial economy, convenience, fairness and comity.'"  *Guanglei Jiao v. Shang Shang Qian Inc.*, No. 18-CV-5624 (ARR)(VMS), 2020 WL 5105063, at *3 (E.D.N.Y. Aug. 31, 2020) (declining to exercise supplemental jurisdiction to avoid "needless decisions of state law"); *but see Augusto Corrales*, 2020 WL 1911189, at *1 (retaining jurisdiction over state law claims because the factors of "judicial economy, convenience, and fairness" outweigh the interest of comity).

Here, judicial economy, convenience, and fairness strongly favor retaining jurisdiction. *First*, Plaintiff has been actively prosecuting the case against D.P. Group and Blanco since he filed the Complaint on April 14, 2021.  Requiring Plaintiff to refile in state court will needlessly delay Plaintiff's recovery against Blanco, who has still not appeared in the case after being served the Complaint on January 31, 2022.  (Aff. of Service, ECF No. 24.)  *Second*, the Court is already familiar with the facts and circumstances of the case because the Court closely reviewed Plaintiff's claims to approve the settlement agreement between Plaintiff and D.P. Group, against whom Plaintiff alleged similar claims under the FLSA and the NYLL.  *See Yunganaula*, 2023 WL 2707024 at *5–6.  Thus, it is in the interest of judicial economy, convenience, and fairness for the Court to consider Plaintiff's motion and conclude the case without further delay.  These considerations substantially outweigh the interests of comity.

Therefore, the Court respectfully recommends that exercising supplemental jurisdiction over Plaintiff's NYLL claims is proper.

**B.    Personal Jurisdiction**

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. V. Yi Da Xin Trading Corp.,* 619 F.3d 207, 213 (2d Cir. 2010).  The three requirements for personal jurisdiction are: (1) the plaintiff's service of process upon the defendant must have been procedurally proper; (2) there must be a statutory basis for personal jurisdiction that renders such service of process effective; and (3) the exercise of personal jurisdiction must comport with constitutional due process principles.  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012) (subsequent history omitted).

All three requirements are met.  *First*, Plaintiff properly served Blanco by delivering copies of the Summons and Complaint to the New York Secretary of State.  (Aff. of Service, ECF No. 24.) This method of service on a corporation complies with federal and state procedural rules.  Fed. R. Civ. P. 4(h)(1)(A), (e)(1); N.Y. C.P.L.R. § 311(a)(1); N.Y. Bus. Corp. Law § 306(b)(1).  *Second*, the Court has personal jurisdiction over Blanco because it is a New York corporation that maintains its principal place of business in Queens County, New York.  (Am. Compl., ECF No. 17 ¶ 12.)  *Third*, "[t]he Court has general jurisdiction over Corporate Defendants, because they are New York corporations 'doing business' in New York." *Pich v. Queens Garden Nursery, Inc.*, No. 22-CV-3362 (MKB)(MMH), 2024 WL 687234, at *3 (E.D.N.Y. Feb. 20, 2024) (quoting *Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018)).  Blanco therefore "has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction"

and "it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Licci*, 673 F.3d at 60 (citation omitted).

### C. Venue

"[A] civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  28 U.S.C. § 1391(b)(1).  A corporation is deemed to be a resident of "any district" in "a state which has more than one judicial district and in which . . . [that] corporation is subject to personal jurisdiction at the time an action is commenced." *Id.* § 1391(d).  Venue is proper in this district because the failure to pay wages alleged in the Amended Complaint occurred during Plaintiff's employment at Blanco, a New York corporation with its registered business address in Queens, New York. (Am. Compl., ECF No. 17 ¶ 12.)

## IV. COMPLIANCE WITH LOCAL CIVIL RULES

Under Local Civil Rule 55.2(c), "all papers submitted to the Court" in support of a motion for default judgment "shall simultaneously be mailed to the party against whom a default judgment is sought at . . . the last known business address of such party."  Local Civ. R. 55.2(c). A court may deny a motion for default judgment if the moving party fails to mail the motion papers and file proof with the Court.  *Tenemaza v. Eagle Masonry Corp.*, No. 20-CV-452 (AMD)(VMS), 2021 WL 8317120, at *3 (E.D.N.Y. July 22, 2021); *see D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 n.2 (2d Cir. 2006) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local rules.").

In this case, it is a close call as to whether the Court should overlook Plaintiff's failure to simultaneously serve and file the default judgment motion.  Plaintiff certainly mailed the motion papers to Blanco on January 24, 2024, the day after the Court directed Plaintiff to

comply with Local Civil Rule 55.2(c).  (*See* Jan. 23, 2024 Scheduling Order; Aff. of Service, ECF No. 45.)  Whether the motion papers were mailed to Blanco at the time of filing is unclear, as counsel conceded at the motion hearing.  (Jan. 30, 2024 Hr'g Tr., ECF No. 46 at 3:9–23, 4:25–5:11.)

However, a careful review of this record suggests that Blanco had *some* notice that a default judgment could result if it did not respond to Plaintiff's allegations.  Specifically, on November 2, 2022, after Blanco failed to respond to the Amended Complaint, Plaintiff's counsel warned Blanco in a certified mailing that: (1) the Clerk of Court had issued a certificate of default against Blanco; (2) Blanco should retain counsel, who should promptly contact Plaintiff's counsel; and (3) if Blanco failed to respond, Plaintiff would ask the Court to enter a default judgment against it.  (Lipsky Decl. Ex. C, ECF No. 44-2 at 35; Jan. 30, 2024 Tr., ECF No. 46 at 4:5–8.) The mailing included a copy of the affidavit of service of the summons and Amended Complaint and the certificate of default. (Lipsky Decl. Ex. C, ECF No. 44-2 at 35.) Blanco did not and has not responded to that mailing or to counsel's mailing on January 24, 2024.  Further, Blanco did not respond to the Court's scheduling order for the motion hearing in which the Court stated its intent to discuss the default judgment motion.  (Jan. 23, 2024 Scheduling Order.)  In this limited instance only, the Court respectfully recommends that it is proper to exercise its discretion to excuse Plaintiff's facial noncompliance with Local Civil Rule 55.2(c) because the premotion notice, coupled with the more recent mailing of the motion papers, "is conducive to fairness and efficiency[.]"  *See* Local Civ. R. 55.2 comm. note.4

---

4 Notwithstanding this conclusion, counsel is warned that future instances of noncompliance are unacceptable and will result in denial of the motion.

## V.     DEFAULT JUDGMENT FACTORS

Courts use the same three-factor test used to set aside a default judgment to determine whether to grant a default judgment.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Avail 1 LLC v. Latief*, No. 17-CV-5841 (FB)(VMS), 2020 WL 5633869, at *4 (E.D.N.Y. Aug. 14, 2020).  Specifically, courts examine: "(1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to the plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment."  *Courchevel 1850 LLC v. Rodriguez*, No. 17-CV-6311 (MKB), 2019 WL 2233828, at *3 (E.D.N.Y. May 22, 2019) (citing *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001)).

Here, all three factors weigh in Plaintiff's favor.  *First*, "[Blanco's] non-appearance and failure to respond to the [Amended] Complaint or otherwise appear indicate willful conduct." *See Tambriz v. Taste & Sabor, LLC*, 577 F. Supp. 3d 314, 321 (E.D.N.Y. 2021).  *Second*, without an answer to the Amended Complaint, "the Court cannot determine whether a defendant has a meritorious defense and granting a default judgment is favored under those circumstances." *Avedana v. Casa Ofelia's Bakery LLC*, No. 20-CV-2214 (DG)(AKT), 2021 WL 4255361, at *4 (E.D.N.Y. Aug. 19, 2021), *adopted by* 2021 WL 4248857 (E.D.N.Y Sept. 17, 2021). *Third*, Plaintiff will be prejudiced if the motion for default judgment is denied because "there are no additional steps available to secure relief in this Court." *Reyes v. Tacos El Gallo Giro Corp.*, No. 20-CV-3474 (EK)(SJB), 2022 WL 940504, at *2 (E.D.N.Y. Jan. 25, 2022) (citation omitted), *adopted by* 2022 WL 939769 (E.D.N.Y. Mar. 29, 2022).

Based on the foregoing, entry of default judgment is permissible.  The Court now turns to the issue of liability.

## VI.   <u>LIABILITY</u>

### A.   **Statute of Limitations**

"The limitations period for FLSA claims is two years, 'except that a cause of action arising out of a willful violation may be commenced within three years.'" *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 320 (2d Cir. 2021) (quoting 29 U.S.C. § 255(a)).  In contrast, the NYLL establishes a six-year limitations period for wage claims.  N.Y. Lab. Law §§ 198(3), 663(3).  The statute of limitations begins to run when an employee begins to work for the employer.  *Pich*, 2024 WL 687234, at *4.

As an initial matter, Plaintiff has voluntarily withdrawn his FLSA claim against Blanco as time-barred.  (Mem., ECF No. 44-1 at 9 n.1 & 12.)  Plaintiff alleges that he worked for Blanco from August 2016 to June 8, 2017.  (Pl. Decl., ECF No. 44-3 ¶ 1.)  Plaintiff commenced this action on April 14, 2021, and added Blanco as a defendant on January 6, 2022.  (Compl., ECF No. 1; Am. Compl., ECF No. 17.)  The claims against Blanco "relate back" to the date of the Complaint for statute of limitations analysis under Rule 15(c) of the Federal Rules of Civil Procedure.  *Cazares v. 2898 Bagel & Bakery Corp.*, No. 18-CV-5953 (AJN), 2020 WL 2832766, at *2 (S.D.N.Y. May 31, 2020) (citing Fed. R. Civ. P. 15(c)).  Therefore, because Plaintiff filed the Complaint nearly four years after his employment with Blanco ended, Plaintiff's FLSA claims are time-barred.  (*See* Compl. ECF No. 1; Pl. Decl., ECF No. 44-3 ¶ 1.)  However, for his NYLL claims, Plaintiff may recover for the entire period of his employment because he filed the Complaint within the six-year statute of limitations period.

### B.   **NYLL Coverage**

To recover under the NYLL, Plaintiff must first "establish that the employment relationship with Defendant falls within the NYLL, which applies to 'any person employed for

hire by an employer in any employment.'" *Perry v. High Level Dev. Contracting & Sec. LLC*, No. 20-CV-2180 (AMD)(PK), 2022 WL 1018791, at *7 (E.D.N.Y. Mar. 16, 2022) (quoting N.Y. Lab. Law § 190), *adopted by* 2022 WL 1017753 (Apr. 5, 2022). "Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." *Id.* (citing *Garcia v. Badyna*, No. 13-CV-4021 (RRM)(CLP), 2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014)). Additionally, "[u]nder the NYLL, an employee-employer relationship is established through 'the degree of control exercised by the purported employer' over the employee." *Brito v. Marina's Bakery Corp.*, No. 19-CV-828 (KAM)(MMH), 2022 WL 875099, at *8 (E.D.N.Y. Mar. 24, 2022) (quoting *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013)). "The factors relevant to this assessment of control include whether the worker: '(1) worked at his own convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on the employer's payroll; and (5) was on a fixed schedule.'" *Luna v. Gon Way Constr., Inc.*, No. 16-CV-1411 (ARR)(VMS), 2017 WL 835321, at *6 (E.D.N.Y. Feb. 14, 2017), *adopted by* 2017 WL 835174 (E.D.N.Y. Mar. 2, 2017) (citing *Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193 (2003)).

Here, analysis of the five *Bynog* factors supports Plaintiff's allegation that Blanco was Plaintiff's employer within the meaning of the NYLL. First, Plaintiff was not free to work "at his own convenience" because he reported to work at set hours. Specifically, he alleges that he "generally worked from Monday to Friday, from 7:00 [a.m.] to 5:00 or 6:00 [p.m.], with a 30-minute lunch break, totaling on average 10-hours per day and 50 hours per week." (Pl. Decl., ECF No. 44-3 ¶ 9.) Moreover, Blanco has not appeared or presented any evidence to show that Plaintiff could choose the days on which he worked on the Parkside Project.

As to the second and third factors, the Court finds them to be neutral because the Amended Complaint does not plead that Plaintiff was free to engage in other employment while working at the Parkside Project or that he received fringe benefits. "In any event, these factors, 'in context, merit modest weight.'" *Elvey v. Silver's Crust W. Indian Rest. & Grill, Inc.*, No. 18-CV-126 (FB)(VMS), 2019 WL 3937126, at *6 (E.D.N.Y. July 3, 2019) (citing *Hart*, 967 F. Supp. 2d at 925), *adopted by* Order Adopting R. & R., *Elvey v. Silver's Crust W. Indian Rest. & Grill, Inc.*, No. 18-CV-126 (FB)(VMS), Dkt. No. 21 (Aug. 20, 2019).

The fourth factor slightly favors Blanco because Plaintiff may have been paid "off the books." *Luna*, 2017 WL 835321 at *6. Plaintiff alleges that he was paid by "personal check" during his employment and that the check "did not contain any explanation of [his] pay" or "show [his] payrate and it did not accurately show the total number of hours" worked per week. (Pl. Decl., ECF No. 44-3 ¶ 16.) Payment by personal check suggests that Plaintiff may not have been on Blanco's official payroll. However, Plaintiff still alleges that it was "Blanco [who] paid [him] by personal check during [his] employment." (Pl. Decl., ECF No. 44-3 ¶ 16.) Further, "[t]o allow [Blanco] to derive a benefit for flouting federal and state wage reporting and tax laws would undermine the very wage laws which were enacted to protect employees." *Luna*, 2017 WL 835321 at *6. Therefore, the fourth factor supports a finding of an employee-employer relationship.

Finally, as to the fifth factor, Plaintiff alleges that he was on a "fixed schedule" because as previously described, he was required to report to work Monday through Friday during specified times. (Pl. Decl., ECF No. 44-3 ¶ 9.) This also supports a finding of an employee-employer relationship.

Balancing all five factors, the Court finds that Blanco exercised a requisite degree of control over Plaintiff that establishes an employee-employer relationship under the NYLL. Therefore, the Court respectfully recommends that Plaintiff qualifies for protections under the NYLL.

### C.    NYLL Statutory Violations

Relevant to the remaining analysis, the Amended Complaint alleges that Blanco violated the NYLL provisions regarding minimum wage, overtime pay, timely pay, wage notices, and wage statements (Counts 2–6), and breached public works contracts (Count 7). (*See* Am. Compl., ECF No. 17 ¶¶ 104–46.)   However, Plaintiff no longer seeks relief for breach of public works contract because of lack of competent evidence.  (Mem., ECF No. 44-1 at 9 n.2.)  Therefore, Blanco's liability will be assessed only as to the remaining claims under the NYLL, which are Counts 2, 3, 4, 5, and 6.

### 1.    Minimum Wage Violation (Count 2)

Under the NYLL, "[a]n employer may not pay an employee less than the statutory minimum wage for each hour the employee worked in any week." *Pastrana v. Mr. Taco LLC*, No. 18-CV-9374 (GBD)(SN), 2022 WL 16857111, at *3 (S.D.N.Y. Sept. 23, 2022) (citing N.Y. Lab. Law § 652(1)), *adopted by* 2022 WL 16857107 (S.D.N.Y. Nov. 10, 2022).  "An employee bringing an action for unpaid minimum wages under . . . the NYLL has the burden of proving that he performed work for which he was not properly compensated." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 41 (E.D.N.Y. 2015) (cleaned up).  A plaintiff may sufficiently establish NYLL minimum wage violations through "an affidavit or declaration stating the number of hours worked."   *Brito*, 2022 WL 875099, at *10. Additionally, "[i]n the context of a default and where Plaintiffs lack access to the employment

records necessary to prove they were not properly compensated, Plaintiffs may meet their burden of proof by relying on recollection alone." *Pastrana*, 2022 WL 16857111, at *5 (quoting *de Los Santos v. Marte Constr., Inc.*, No. 18-CV-10748 (PAE)(KHP), 2020 WL 8549054, at *5 (S.D.N.Y. Nov. 25, 2020), *adopted by* 2020 WL 8549055 (S.D.N.Y. Dec. 17, 2020)).

Under New York law, the applicable minimum wage rate is determined by the size and location of the employer and the dates of the plaintiff's employment. *See* N.Y. Lab. Law § 652(1); 12 N.Y.C.R.R. § 146-1.2(a)(1); *Pastrana*, 2022 WL 16857111, at *3. Plaintiff's first week of employment with Blanco was in August 2016. (Pl. Decl., ECF No. 44-3 ¶ 10.) At that time, the applicable New York City minimum wage rate was $9.00 per hour. N.Y. Lab. Law § 652(1).

Here, Plaintiff sufficiently establishes that Defendant failed to pay him the applicable minimum wage of $9.00 per hour for his first week of work. *See* N.Y. Lab. Law § 652(1). Specifically, Plaintiff alleges that "[f]or the first week I worked on the Parkside Project, I worked at least 50 hours. However, Blanco failed to pay me any wages, telling me that my first week's pay was a 'work deposit.' As a result, it paid me *zero* for that week." (Pl. Decl., ECF No. 44-3 ¶ 11 (emphasis in original); Am. Compl., ECF No. 17 ¶ 44.) Accordingly, the Court respectfully recommends that Blanco should be liable for violations of the NYLL's minimum wage provisions.

## 2.   Overtime Pay Violation (Count 3)

The NYLL provides that eight hours constitutes a "legal day's work," N.Y. Lab. Law § 160, and that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate for hours worked in excess of 40 hours in one

workweek."  12 N.Y.C.R.R. § 146-2.2.  "[I]n order to state a plausible FLSA and NYLL overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."  *Cortese v. Skanska Koch, Inc.*, No. 21-473, 2023 WL 8368858, at *3 (2d Cir. Dec. 4, 2023) (summ. order) (cleaned up) (quoting *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013)). *"*Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013).

Here, Plaintiff sufficiently establishes that Blanco failed to pay him the requisite overtime pay.  Plaintiff claims that he "regularly worked more than 40 hours per week[,]" although he was never paid overtime.  (Pl. Decl., ECF No. 44-3 ¶¶ 12, 16.)  Plaintiff alleges that he worked Monday to Friday, from 7:00 a.m. to 5:00 or 6:00 p.m., with a 30-minute lunch break, averaging "10-hours per day and 50 hours worked per week."  (Pl. Decl., ECF No. 44-3 ¶ 9.)  Blanco paid Plaintiff $20 per hour by personal check "regardless of the number of hours [he] worked" each week. (Pl. Decl., ECF No. 44-3 ¶¶ 10, 12.)  Plaintiff also regularly noticed that two to seven overtime hours were missing from his weekly pay.  (Pl. Decl., ECF No. 44-3 ¶ 13.)  The Court therefore respectfully recommends that Blanco should be liable for failure to pay overtime under the NYLL.

### 3.    **Untimely Pay (Count 4)**

The NYLL requires employers to pay manual workers "weekly and not later than seven calendar days after the end of the week in which the wages are earned."  N.Y. Lab. Law § 191(1)(a)(i); *Tacuri v. Nithin Constr. Co.*, No. 14-CV-2908 (CBA)(RER), 2015 WL 790060, at *4 (E.D.N.Y. Feb. 24, 2015).  "The definition of 'manual worker' includes laborers, which

plainly includes construction workers." *Andreyuk v. ASF Constr. & Excavation Corp.*, No. 19-CV-7476 (AEK), 2022 WL 4658457, at *12 (S.D.N.Y. Sept. 30, 2022) (citing N.Y. Lab. Law § 190(4)).

Here, Plaintiff qualifies as a "manual worker" under the NYLL's definition because, as a manual laborer, as his primary duties included "assisting foundation and base construction workers with bringing materials, preparing and handing them tools, cutting wood[,] and lifting heavy construction materials as well as assisting carpenters and performing hoist lift work." (Am. Compl., ECF No. 17 ¶ 26; Pl. Decl., ECF No. 44-3 ¶ 7.)  Plaintiff claims that he spent "more than 95%" of his working time engaging in physical labor.  (Pl. Decl., ECF No. 44-3 ¶ 8.)  Plaintiff further asserts that Blanco failed "to pay [him] on a weekly basis on at least one occasion," (*id.* ¶ 15), a violation of Section 191(1)(a)(i).

Therefore, the Court respectfully recommends that Blanco should be liable for failure to timely pay Plaintiff his wages.

### 4.    Wage Notice and Wage Statement Violations (Counts 5, 6)

Pursuant to the New York Wage Theft Protection Act ("WTPA"), an employer must provide its employees, at the time of hiring, a written notice containing, *inter alia*, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; . . . the regular pay day designated by the employer"; and the employer's address and telephone number.  N.Y. Lab. Law § 195-1(a).  The WTPA also requires employers to "provide employees with 'a statement with every payment of wages,' listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate

of pay, and the number of hours worked." *Perry*, 2022 WL 1018791, at *8 (quoting N.Y. Lab. Law § 195-3).

"The Supreme Court recently held that a technical violation triggering a statutory damage award only confers Article III standing if the plaintiff demonstrates an actual and concrete injury resulting from that violation." *Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929 (KAM)(RML), 2022 WL 18999832, at *6 (E.D.N.Y. Dec. 13, 2022) (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021)), *adopted as modified*, 2023 WL 2206568 (E.D.N.Y. Feb. 24, 2023). "To establish [Article III] standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*, 141 S. Ct. at 2203 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). To demonstrate an injury in fact, a plaintiff "must show the invasion of a [1] legally protected interest that is [2] concrete and [3] particularized and [4] actual or imminent, not conjectural or hypothetical." *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 62 (2d Cir. 2021) (cleaned up).

Since *TransUnion* was decided, "[c]ourts in this Circuit have found allegations of technical violations of New York Labor Law's wage notice and statement requirements to be insufficient, on their own, to confer Article III standing." *Guthrie*, 2022 WL 18999832, at *6 ("Plaintiff has not alleged that he suffered any harm or injury due to defendant's failure to provide wage notices or wage statements.") (collecting cases); *Sanchez v. Trescly*, No. 19-CV-4524 (KAM)(PK), 2023 WL 2473070, at *1 (E.D.N.Y. Mar. 13, 2023) ("Regarding Plaintiffs' NYLL § 195(1) wage notice claim and NYLL § 195(3) wage statement claim, however, the Court finds that Plaintiffs lack Article III standing to bring and obtain damages for these claims

18

because Plaintiffs fail to allege actual and concrete injuries."); *Ramirez v. Urion Constr. LLC*, No. 22-CV-3342 (LGS), 2023 WL 3570639, at *8 (S.D.N.Y. May 19, 2023) ("While there are many decisions previously awarding plaintiffs for violations of the wage and notice requirements without examining standing, or in some cases even finding Article III standing, . . . they all precede [*TransUnion*]"); *see also Rivera Avila v. Velasquez Constr. Corp.*, No. 22-CV-2606 (DG)(CLP), 2023 WL 5979180, at *7 (E.D.N.Y. June 30, 2023), *adopted by* Order Adopting R. & R., *Rivera Avila v. Velasquez Constr. Corp.*, No. 22-CV-2606 (DG)(CLP) (E.D.N.Y. Aug. 17, 2023) (recommending denial of default and that plaintiff should be granted leave to amend the pleadings to allege standing "given that the courts' rulings on standing and these provisions of the NYLL are fairly recent").

Conversely, when "[t]he gravamen of the complaint is that the denial of plaintiff's statutory right to these documents caused plaintiff to fail to realize that defendants were deducting certain benefits from his wages, resulting in his underpayment," courts have ruled that plaintiffs sufficiently demonstrated "a tangible injury resulting from the violation" to establish Article III standing. *Stih v. Rockaway Farmers Mkt., Inc.*, No. 22-CV-3228 (ARR)(RER), 2023 WL 2760492, at *7 (E.D.N.Y. Apr. 3, 2023) (plaintiff alleged that failure to provide him with proper wage notices injured him by "denying him the right to be adequately apprised of the terms and conditions of his employment," including allowances defendant purported to claim against his salary); *see also Cuchimaque v. A. Ochoa Concrete Corp.*, No. 22-CV-6136 (RPK)(RML), 2023 WL 5152336, at *5 (E.D.N.Y. July 18, 2023), *adopted by* Order Adopting R. & R., *Cuchimaque v. A. Ochoa Concrete Corp.*, No. 22-CV-6136 (RPK)(RML) (E.D.N.Y. Aug. 23, 2023) (plaintiff's affidavit in support of default judgment motion established Article III standing for NYLL wage notice claims where plaintiff

alleged that "the breach of these obligations injured me by denying me the right to know the conditions of my compensation, resulting in the underpayment of wages").[5]

Here, "[alt]hough the deficiencies in Defendant's provisions of hiring notices may amount to violations of the labor law, neither Plaintiff nor the record demonstrates how those technical violations led to either a tangible injury or something akin to a traditional cause of action, as required by the Supreme Court." *Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929 (KAM)(RML), 2023 WL 2206568, at *6 (E.D.N.Y. Feb. 24, 2023).[6]  Plaintiff alleges that "Defendant[] did not post a poster advising Plaintiff and his coworkers of their rights to a minimum wage and overtime premium pay at their office or any job location." (Am. Compl., ECF No. 17 ¶ 71; Pl. Decl., ECF No. 44-3 ¶ 17.)  Plaintiff declares that he "did not get a wage statement with any payment of wages.  Likewise, Blanco did not provide [him] with a Notice and Acknowledgment of Payrate and Payday within 10 business days of [his] first employment date." (Pl. Decl., ECF No. 44-3 ¶ 18.)  However, Plaintiff does not allege that these violations "resulted in an injury greater than Defendant's minimum wage, overtime, and spread-of-hours wage violations." *Pastrana*, 2022 WL 16857111, at *7.  The Court finds that Plaintiff lacks standing to pursue claims or recover damages for Blanco's alleged violations of the NYLL's wage notice and wage statement provisions.

---

[5] *But see Bueno v. Buzinover*, No. 22-CV-2216 (PAE)(KHP), 2023 WL 2387113, at *3 (S.D.N.Y. Mar. 7, 2023) ("Denying an employee such notices—as alleged here—can impinge on an employee's interests not only in being paid what is owed, but also in being able to advocate for the receipt of proper pay. The Court thus finds that, by alleging that they were not furnished the statutorily required notices, plaintiffs have asserted a concrete and particularized injury sufficient to confer standing for their [NYLL] wage notice and wage statement claims.").

[6] Plaintiff Guthrie appealed that court's decision. *See* Appellant Br., *Guthrie v. Rainbow Fencing Inc.*, No. 23-350, 2023 WL 3305691 (2d Cir. May 3, 2023).

Accordingly, the Court respectfully recommends that Plaintiff's NYLL wage notice and wage statement claims should be dismissed without prejudice.

## VII.  **DAMAGES**

As Blanco's liability has been established, the Court turns to evaluate damages.  "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."  *Bricklayers*, 779 F.3d at 189 (cleaned up).  Rather, "[t]he [C]ourt must be satisfied that Plaintiff has met the burden of proving damages to the [C]ourt with reasonable certainty."  *Balhetchet v. Su Caso Mktg. Inc.*, No. 19-CV-4475 (PKC)(SJB), 2020 WL 4738242, at *3 (E.D.N.Y. Aug. 14, 2020) (cleaned up).  Courts must determine "damages with reasonable certainty," and avoid impermissible speculation. *Pasatieri v. Starline Prod., Inc.*, No. 18-CV-4688 (RPK)(VMS), 2020 WL 5913190, at *2 (E.D.N.Y. Oct. 6, 2020) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).

Under the NYLL framework, "where an employer fails to 'keep adequate records or provide statements of wages to employees as required' by the statute, the employer 'shall bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements.'"  *Brito*, 2022 WL 875099, at *15 (citing *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498 (S.D.N.Y. 2017)).  Here, Blanco has failed to come forward with evidence to prove that Plaintiff was paid appropriate wages.  Once an employee has shown a *prima facie* case of unpaid wages under the NYLL, and the employer fails to meet its burden to produce evidence that suggests otherwise, then "approximate damages may be awarded."  *Kalloo v. Unlimited Mech. Co. of NY*, 977 F. Supp. 2d 187, 204 (E.D.N.Y. 2013).

As described below, the Court respectfully recommends awarding Plaintiff unpaid minimum wage, unpaid overtime, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs, but denying damages for untimely pay[7] and statutory penalties for wage notice and wage statement violation.

### A.      Minimum Wage Pay

Plaintiff requests $360.00 for unpaid minimum wage.  (Mem., ECF No. 44-1 at 19.)

"Both the FLSA and the NYLL require New York employers to pay their employees at least the respective federal, state, or city minimum wage, whichever is higher, for every hour worked."  *Brito*, 2022 WL 875099, at \*16.  "Under both the FLSA and NYLL, plaintiffs are entitled to overtime compensation of at least one and one-half times their regular hourly rate."  *Id.*  "Where a plaintiff is compensated below the statutory minimum wage under either [the FLSA or NYLL], the overtime fifty-percent premium is calculated based upon the applicable minimum wage not the plaintiff's actual pay rate."  *Id.* (cleaned up).

For his first week of employment in August 2016, Plaintiff worked "at least 50 hours" yet Blanco "failed to pay [him] any wages."  (Pl. Decl., ECF No. 44-3 ¶ 11.)  Because Blanco has not appeared, there has been no discovery of wage records to refute Plaintiff's claim that he was paid "*zero*" during his first week because his pay was considered a "work deposit." (*Id.* (emphasis in original).)  The Court already determined that Plaintiff is entitled to the then-applicable New York state minimum wage rate of $9.00 per hour for the first 40 hours of that

---

[7] Although the Court recommends that Blanco should be liable for failure to timely pay Plaintiff, the Court will not separately assess damages for this cause of action because they are already being considered within the minimum pay and overtime damages calculation.  Further, Plaintiff has stated he "is not seeking separate liquidated damages on his untimely payment of wages claims as he is [already] seeking liquidated damages on his overtime claim."  (Mem., ECF No. 44-1 at 17 n.29.)

work week.  *See* § VI.C.1., *supra*.  Accordingly, the Court respectfully recommends that Plaintiff should be awarded **$360.00** in unpaid minimum wage for his first work week.

**B.    Overtime Wage Pay**

Plaintiff seeks $10,105.50 for unpaid overtime wages.  (Mem., ECF No. 44-1 at 19–20.)

Plaintiff is entitled to unpaid overtime at the rate of one and one-half times his regular rate of pay for hours worked in excess of 40 hours per workweek.  *Dejesus*, 726 F.3d at 88; 12 N.Y.C.R.R. § 146-1.4.  When a plaintiff is compensated below the statutory minimum wage under the NYLL, the overtime premium is calculated based on the applicable minimum wage, not plaintiff's actual pay rate.  *Brito*, 2022 WL 875099, at *16.  At all other times, the calculation is based on Plaintiff's actual pay rate.  *See Augusto Corrales*, 2020 WL 1911189, at *3.

Here, Plaintiff is entitled to unpaid overtime at the rate of one and one-half times his regular rate of pay for hours worked in excess of 40 hours per workweek, or $30 per hour for those hours, because he was paid an hourly rate of only $20.00, regardless of the number of hours he worked (*i.e.*, $20.00 x 1.5).  (Pl. Decl., ECF No. 44-3 ¶ 12.)  Therefore, he is entitled to $10.00 for every hour of overtime worked. (*See* Mem., ECF No. 44-1 at 20 n.38.)  From August 2016[8] to June 8, 2017, Plaintiff alleges that he "generally worked" 50 hours per week, or 10 hours of overtime per week.  (Pl. Decl., ECF No. 44-3 ¶¶ 9–10; Mem., ECF No. 44-1 at

[8] Plaintiff considers August 1, 2016 to be his first day of work for purposes of calculating his owed wages.

20 n.39.) Accordingly, Plaintiff is entitled to the following amounts of unpaid overtime for 43 weeks, as shown in the following table:

| Dates of Employment | Overtime Owed Per Hour | Overtime Hours Worked Per Week | Weeks Worked | Overtime Owed |
|---|---|---|---|---|
| 08/01/2016 to 12/31/2016 | $10.00 | 10 | 21 | $2,100.00 |
| 01/01/2017 to 06/08/2017 | $10.00 | 10 | 22 | $2,200.00 |
| Total: | | | | $4,300.00 |

(*See* Mem., ECF No. 44-1 at 20.)  In addition, Plaintiff alleges that he "regularly noticed that 2 to 7 hours were missing" from his paycheck each week.  (Pl. Decl., ECF No. 44-3 ¶ 13.) Accordingly, he seeks additional overtime pay for the average of "4.5 missing hours" per week, for which he was never paid anything, as shown in the following table:

| Dates of Employment | Overtime Owed Per Hour | Overtime Hours Worked Per Week | Weeks Worked | Overtime Owed |
|---|---|---|---|---|
| 08/01/2016 to 12/31/2016 | $30.00 | 4.5 | 21 | $2,835.00 |
| 01/01/2017 to 06/08/2017 | $30.00 | 4.5 | 22 | $2,970.00 |
| Total: | | | | $5,805.00 |

(*See* Mem., ECF No. 44-1 at 20.)  Therefore, Plaintiff seeks a total of $10,105.00[9] in overtime pay for the 43 weeks he worked from August 2016 to June 8, 2017.  Based on these calculations, the Court respectfully recommends that Plaintiff should be awarded **$10,105.00** in unpaid overtime wages.

---

[9] $4,300.00 + $5,805.00 = $10,105.00.

### C.    Liquidated Damages

Plaintiff seeks $10,105.00 in liquidated damages, although he is entitled to $10,465.00 for unpaid minimum wage and unpaid overtime compensation.  (Mem., ECF No. 44-1 at 20–21.)  The Court calculates the total possible liquidated damages to be $10,465.00 because the total minimum wage owed is $360.00 and the total overtime owed is $10,105.00.  Plaintiff's counsel agreed at the motion hearing that the correct total amount "should be [$]10,465."  (Jan. 30, 2024 Hr'g Tr., ECF No. 46 at 11:2–7; *see also* Proposed Judgmt., ECF No. 48 at 2 n.2 (noting error in motion papers' request for liquidated damages).)

Under the NYLL, an employee may recover liquidated damages equal to the amount of unpaid minimum wage and overtime compensation, unless the employer proves a good faith basis for believing that its underpayment of wages complied with the law.  N.Y. Lab. Law §§ 198(1-a), 663(1); *see also Perry*, 2022 WL 1018791, at *11.  Here, where Blanco defaulted and therefore make no showing that it acted in good faith when it underpaid Plaintiff, liquidated damages under the NYLL is appropriate.  Accordingly, the Court respectfully recommends that Plaintiff should be awarded the requested amount of **$10,465.00** in liquidated damages.

### D.    Pre-judgment Interest

Plaintiff seeks pre-judgment interest in the amount of $6,127.65.  (Mem., ECF No. 44-1 at 21.)  Plaintiff's formula multiplies the total unpaid wages for each year by nine percent, then multiplies by the number of years between Plaintiff's dates of employment and the motion filing date in 2023—*e.g.*, for 2016, $5,295.00 x .09 x 7 years = $3,335.85; for 2017, $5,170.00 x .09 x 6 years = $2,791.80.  (*See* Mem., ECF No. 44-1 at 21 n. 47; Jan. 30, 2024 Hr'g Tr., ECF No. 46 at 8:17–22.)

The NYLL enables a plaintiff to recover both liquidated damages and pre-judgment interest. *See Fermin*, 93 F. Supp. 3d at 48. Accordingly, Plaintiff is eligible to recover pre-judgment interest on compensatory damages for unpaid wages available under the NYLL at 9% per annum. *See id.* at 49–50; N.Y. C.P.L.R. § 5004; *see also Avedana*, 2021 WL 4255361, at *12 (applying pre-judgment interest rate to NYLL claims).

When damages "were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). Courts applying N.Y. C.P.L.R. § 5001 have "wide discretion in determining a reasonable date from which to award pre-judgment interest[.]" *Fermin*, 93 F. Supp. 3d at 49. Courts generally calculate pre-judgment interest under the NYLL "from the midpoint date of the claims through the date judgment is entered" as well as from "the midpoint between the first and last dates of the plaintiff's NYLL claims." *Perry*, 2022 WL 1018791, at *13.

Here, Plaintiff is entitled to pre-judgment interest for his unpaid wages under the NYLL. The recommended recovery for unpaid minimum wage and overtime is $10,465.00. For purposes of calculating pre-judgment interest, the Court selects January 3, 2017, the midpoint between Plaintiff's start date of employment (August 1, 2016) and Plaintiff's end date of employment (June 8, 2017) as a reasonable intermediate date. Applying a nine percent per annum rate, the Court finds that Plaintiff should be awarded **$6,751.86** in pre-judgment

interest from January 3, 2017, through today, March 4, 2024.  This amount will increase by $2.58 per day until the entry of judgment.[10]

Accordingly, the Court respectfully recommends that Plaintiff should be awarded **$6,751.86** in pre-judgment interest using the midpoint method, which will increase by $2.58 per day until the entry of judgment.

### E.    Attorneys' Fees

Plaintiff seeks attorneys' fees in the amount of $22,003.93 based on an estimated 82.21 hours of work for attorneys Douglas B. Lipsky, Milana Dostanitch, Bayron Flores Tapia, and unidentified paralegals.  (Mem., ECF No. 44-1 at 22–23.)

The NYLL allows employees to recover the "ordinary costs" and "reasonable attorney's fees" in wage claim actions.  N.Y. Lab. Law § 198; *Callari v. Blackman Plumbing Supply, Inc.*, No. 11-CV-3655 (ADS)(AKT), 2020 WL 2771008, at *6 (E.D.N.Y. May 4, 2020), *adopted by* 2020 WL 2769266 (E.D.N.Y. May 28, 2020) ("Both the FLSA and NYLL are fee-shifting statutes which entitle a plaintiff to an award of reasonable attorney's fees and costs in wage-and-hour actions.")  "District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request."  *Perry*, 2022 WL 1018791, at *14.

"The starting point for determining the presumptively reasonable fee award is the lodestar amount, which is the product of a reasonable hourly rate and the reasonable number of hours required by the case."  *Pich*, 2024 WL 687234, at *13 (cleaned up).  "To determine a

---

[10] The Court calculates the daily pre-judgment interest rate by multiplying the total amount of unpaid wages ($10,465.00) by 9%, then dividing by 365, for a daily rate of $2.58.  The daily rate is then multiplied by the number of days between January 3, 2017, and March 4, 2024 (2,617 days).

reasonable hourly rate, courts consider market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* (cleaned up). "If the Court finds that some of the time the attorney billed was not reasonably necessary, it should reduce the time for which compensation is awarded accordingly." *Perry*, 2022 WL 1018791, at *14 (cleaned up). "The applicant bears the burden to demonstrate reasonableness." *Sadowski v. Yeshiva World News, LLC*, No. 21-CV-7207 (AMD)(MMH), 2023 WL 2707096, at *8 (E.D.N.Y. Mar. 16, 2023), *adopted by* 2023 WL 2742157 (E.D.N.Y. Mar. 31, 2023).

Plaintiff seeks attorneys' fees based on the following hourly rates: $400 for Partner Lipsky; $300 for Senior Associate Dostanitch; $225 for Junior Associate Flores Tapia; and $85 for paralegal work from unidentified individuals. (Mem., ECF No. 44-1 at 22–23.) This Court previously assessed and approved the reasonableness of the same attorneys' fees as part of the settlement between Plaintiff and D.P. Group. *Yunganaula*, 2023 WL 2707024, at *7–8. Therefore, the proposed hourly rates requested in this motion are reasonable.

However, the Court finds that the estimated 82.21 hours for litigating the case against Blanco is unreasonable. Counsel asserts that it allocated "at least 164.42 hours" to the entire litigation against both defendants, then divides this number by two to determine the number of hours expended to litigate against Blanco alone. (Lipsky Decl. Ex. E, ECF No. 44-2 at 43–97; Jan. 30, 2024 Hr'g Tr., ECF No. 46 at 12–13.) Relatedly, Plaintiff justifies the requested overall attorneys' fee because the attorneys "did not split the time records per Defendant." (*Id.* at 23; *see also* Jan. 30, 2024 Hr'g Tr., ECF No. 46 at 12:6–13:2 (counsel's explanation that there was "so much overlap of talking about Blanco that just subtracting the time out that was specific to the mediation or for the [motion for settlement approval] could have . . . understated

28

[the total hours]").)[11]  However, even considering the inevitable overlap in a multi-defendant case, Plaintiff's calculation unreasonably overestimates the actual work performed with respect to Blanco.  Counsel performed substantially more services for litigation against D.P. Group than that for litigation against Blanco.  Blanco never appeared in the case and thus never participated in discovery or settlement negotiations with Plaintiff.  As such, some of counsel's time entries could only describe services for litigation against D.P. Group.  (*See, e.g.*, Lipsky Decl. Ex. E, ECF No. 44-2 at 53 (0.1 hours billed for "Correspondence with opposing counsel to schedule a rule 26(f) conference" on October 12, 2021 by attorney Dostanitch refers to D.P. Group, not Blanco).)

In reviewing reasonableness of fees, "a district court should examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case, and if it concludes that any expenditure of time was unreasonable, it should exclude these hours from the lodestar calculation."  *Green v. City of New York*, 403 F. App'x 626, 630 (2d Cir. 2010) (cleaned up).  "Where time entries are vague, duplicative, or otherwise inadequate, a court may make an across-the-board reduction or percentage cut, in the amount of hours."  *Perry*, 2022 WL 1018791, at *14 (cleaned up).  Such across-the-board percentage cuts are "a practical means of trimming fat from a fee application."  *Green*, 403 F. App'x at 630.  Courts "have reduced or excluded attorneys' hours spent on matters related to non-defaulting defendants, finding them to be unreasonable, and

---

[11] Similarly, counsel subtracted the attorneys' fees awarded pursuant to Plaintiff's settlement agreement with D.P. Group from the overall total attorneys' fees incurred in the action, and divided by half: $46,526.20 (total attorneys' fees) – $2,518.33 (fees awarded in settlement agreement, *see Yunganaula*, 2023 WL 2707024, at *7–8) = $44,007.87 x 0.5 = $22,003.93.

have reduced fees relating to both non-defaulting and defaulting defendants by a percentage." *JTH Tax LLC v. Sanchez*, No. 22-CV-6160 (AS)(JLC), 2023 WL 6813449, at *7 (S.D.N.Y. Oct. 16, 2023), *adopted by* 2023 WL 8936352 (S.D.N.Y. Dec. 27, 2023) (collecting cases). Here, the Court carefully reviewed counsel's billing records with an understanding that some of the time entries may concern work performed as to both D.P. Group and Blanco, such as drafting the Complaint and Amended Complaint.  Based on its review, the Court finds that 20%, not 50%, is a more reasonable percentage of total hours billed that should be allocated to Blanco.

Accordingly, the Court respectfully recommends a total attorneys' fee award of **$8,801.57**.[12]

## F.    Costs

Finally, Plaintiff seeks $79.51 in costs.  (Mem., ECF No. 44-1 at 29.)  Pursuant to the NYLL, a prevailing plaintiff is entitled to an award of reasonable attorneys' fees and costs. N.Y. Lab. Law §§ 198, 663(1); *Avedana*, 2021 WL 4255361, at *13.  Plaintiff must provide sufficient documentary evidence to support an award of reasonable costs.  *Marine v. Vieja Quisqueya Rest. Corp.*, No. 20-CV-4671 (PKC)(RML), 2022 WL 17820084, *11 (E.D.N.Y. Sept. 8, 2022), *adopted by* Order Adopting R. & R., *Marine v. Vieja Quisqueya Rest. Corp.*, No. 20-CV-4671 (PKC)(RML) (E.D.N.Y. Sept. 23, 2022); *Brito*, 2022 WL 875099, at *27 (rejecting plaintiffs' "conclusory" calculation of litigation costs, as it is "wholly unsupported by actual receipts, dates of payments, or any other available information to assist in the Court's

---

[12] The calculation is: $46,526.20 (total attorneys' fees) – $2,518.33 (fees awarded in settlement agreement) = $44,007.87 x 0.2 = $8,801.57.

determination of the reasonableness of such fees.")  Here, Plaintiff has submitted counsel's billing records to support the costs incurred as to Blanco of $79.51—specifically, $68.70 for service of process and $9.65 for certified mail postage fee.  (*See* Lipsky Decl. Ex. F, ECF No. 44-2 at 99; Receipts, ECF No. 47 at 2–3.)

Therefore, the Court respectfully recommends that Plaintiff should be awarded a total of **$79.51** in costs.

### G.    Post-judgment Interest

Finally, Plaintiff did not specifically request post-judgment interest in the Amended Complaint or in the default motion submission.  However, a plaintiff is "entitled to post-judgment interest on all civil money awards as a matter of right in federal court." *Brito*, 2022 WL 875099, at *27.  "[T]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Tru-Art Sign Co. v. Local 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (citing 28 U.S.C. § 1961).  Accordingly, the Court recommends that Plaintiff should be granted post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

## VIII.  <u>CONCLUSION</u>

For the foregoing reasons, the Court respectfully recommends that Plaintiff's motion for default judgment at ECF No. 44 should be **granted in part** as follows: (1) the Clerk of Court should enter the proposed default judgment at ECF No. 48 (as amended)[13] against

---

[13] The amendments to the proposed judgment at ECF No. 48 are: (1) on page 3, revising the requested damages to be consistent with this Report and Recommendation; and (2) substituting the name and title of the presiding district judge in the signature block.

Blanco Trucking, Inc. and (2) Plaintiff should be awarded damages in the amount of **$36,562.94**, which includes: (a) $360.00 for unpaid minimum wage; (b) $10,105.00 for unpaid overtime; (c) $10,465.00 for liquidated damages; (d) $6,751.86 in pre-judgment interest; (e) attorney's fees of $8,801.57; (f) costs of $79.51; and (g) post-judgment interest at the rate set forth in 28 U.S.C. § 1961.  All other requests for relief in Plaintiff's motion regarding Blanco Trucking, Inc. should be **denied**.

A copy of this Report and Recommendation is being served on Plaintiff via ECF.  The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to Blanco Trucking, Inc., 103-22 101st Street, Ozone Park, New York 11417.

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  Any requests for an extension of time to file objections shall be directed to Judge Amon.  If a party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision.  *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
March 4, 2024

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge